

| | Operating Procedure | Effective Date December 1, 2015 | | Number 720.1 |
| --- | --- | --- | --- | --- |
| | | Amended 4/29/16, 5/16/16, 8/25/16 (Eff. 10/1/16), 10/27/16, 1/6/17 | | Operating Level Department |
| | | Supersedes Operating Procedure 720.1 (11/1/12) | | |
| | | Authority COV §53.1-32, §53.1-40.1, §54.1-2986 | | |
| Subject ACCESS TO HEALTH SERVICES | | ACA/PREA Standards 4-4039, 4-4182, 4-4344, 4-4344-1, 4-4346, 4-4353, 4-4353-1, 4-4397, 4-4400, 4-4403; 4-ACRS-4C-01, 4-ACRS-4C-19, 4-ACRS-5A-11, 4-ACRS-7D-26; 2-CO-4E-01; §115.83[e], §115.283[e] | | |
| Incarcerated Offender Access Yes ☒    No ☐ | FOIA Exempt   Yes ☐   No ☒ Attachments   Yes ☐   No ☒ | Office of Primary Responsibility Health Services Unit | | |

## I. PURPOSE

This operating procedure establishes general procedures for offenders incarcerated in Department of Corrections facilities to access medical services and ensures that offenders know how to access the health care system for emergencies and routine medical care.

## II. COMPLIANCE

This operating procedure applies to all units operated by the Department of Corrections (DOC). Practices and procedures shall comply with applicable State and Federal laws and regulations, Board of Corrections policies and regulations, ACA standards, PREA standards, and DOC directives and operating procedures.

## III. DEFINITIONS

**Access to Care** - In a timely manner patients are seen by a clinician, given a professional judgment, and receive care that is ordered.

**Emergency Care** - Treatment of an acute injury or illness that requires immediate medical attention

**Health Authority** - The individual who functions as the administrator of the facility medical department

**Health Trained Staff** - A DOC employee, generally a Corrections Officer who has been trained to administer health screening questionnaires, including training as to when to refer to health care staff and with what level of urgency

**Medical Authority** - The lead facility medical practitioner; clinical supervision is provided by the Chief Physician.

**Medical Practitioner** - A physician, physician's assistant, or nurse practitioner licensed to practice medicine in the Commonwealth of Virginia or in the jurisdiction where the treatment is to be rendered or withheld.

**Sick Call** - Care for ambulatory offenders with health care requests which are evaluated and treated in a clinic setting; it is the system through which each offender reports for and receives appropriate health services for a non-emergency illness or injury, in a timely manner in consideration of medical urgency.

**Special Housing** - A general term for special purpose bed assignments including segregation, disciplinary segregation, general detention, and pre-hearing detention

**Triage** - Sorting and classifying of offender health complaints to determine appropriate priority and treatment.

**Urgent Care** - Treatment of an acute condition or deterioration of a chronic condition, that is not emergent but if left untreated, may deteriorate into a more serious or emergent problem.

EXHIBIT 1

Operating Procedure: 720.1
December 1, 2015

IV.  PROCEDURE

A.  Access to Health Services

1.  The Facility Unit Head, in conjunction with the Health Authority, will ensure that offenders have timely access to, and are provided adequate health care services. (2-CO-4E-01)  The continuity of health care including the continuity of medication shall be available from admission to discharge.

2.  The facility shall establish and maintain a sufficient number of health staff of varying types or adopt such other measures as shall be necessary to provide offenders with adequate and timely evaluation and treatment, including continuity and coordination of care.  Nurses must comply with the *Regulations Governing the Practice of Nursing* to ensure practice falls within the scope of nursing licenses. (changed 5/16/16)

3.  Each Health Authority shall ensure that offenders entering their facility are provided with information about procedures to access routine and emergency health care. (4-4344) (changed 1/6/17)

    a.  Information provided shall include any copay requirements; noting that medical care is not denied based on an offender's ability to pay, as well as procedures for submitting grievances.

    b.  Information on access to health services is communicated to offenders in writing and orally in a form and language that is easily understood.  When a literacy or language problem prevents an offender from understanding written information, a staff member or translator assists the offender.

    c.  Notification should take place at the time of reception and each time an offender is moved to a new facility.

    d.  Notification should be documented on an *Health Services Offender Orientation* 720_F16.

4.  No security or administrative staff shall approve or disapprove requests for health care.

5.  Offenders have unimpeded access to health care, including, but not limited to, adequate pain management for acute and chronic conditions and to a system for processing complaints regarding health care. (4-ACRS-4C-01)  Offenders may process complaints regarding health care through the Offender Grievance Procedure in institutions or by appeal to the Facility Unit Head at Community Corrections facilities.

6.  Health care encounters, including medical and mental health interviews, examinations, and procedures, should be conducted in a setting that respects the offenders' privacy. (4-4403)  Each health care encounter, other than routine pill call and special housing rounds, shall be documented on the *Health Services Complaint and Treatment Form* 720_F17.

7.  Incarcerated offenders, including those on work release and in Community Corrections programs, may not choose their own health care practitioner.

8.  Treatment of offenders' health problems will not be limited to resources available within a facility. If a higher level of care is required than can be provided at the assigned facility, the offender should be moved to an appropriate facility or provided community services if necessary. (4-4039, 4-ACRS-5A-11, 4-ACRS-7D-26)

9.  Offenders are to be notified on a *Laboratory/Diagnostic Test(s) Results* 720_F35 that their laboratory and diagnostic test results have been received and reviewed and that the results are either (check box) "acceptable" or "please see practitioner to discuss the results." (added 10/27/16)

10. Pregnancy management is available to offenders as needed; pregnant offenders are not accepted into Community Corrections facilities.

    a.  Pregnancy management includes the following services: (4-4353)
        i.   Pregnancy testing
        ii.  Routine prenatal care
        iii. High-risk prenatal care
        iv.  Management of the chemically addicted pregnant offender

       v. Postpartum follow-up

      vi. Unless mandated by state law, birth certificates/registry does not list a correctional facility as the place of birth

   b. Nursing infants are not allowed to remain with their mothers (4-4353-1)

   c. Offenders who are pregnant as a result of sexually abusive vaginal penetration while incarcerated shall receive timely and comprehensive information about and timely access to all lawful pregnancy-related medical services. (§115.83[e], §115.283[e])

11. Offenders will not perform or assist in the delivery of health care, medication, screening, or scheduling of health care for other offenders. (4-4182)  Offenders shall not be permitted to operate diagnostic and therapeutic equipment, nor have access to surgical instruments, needles, or Health Records.  This does not apply to "self-care" events, such as insulin administration.

12. Medical co-payment fees are required for certain health services in accordance with Operating Procedure 720.4, *Co-Payment for Health Care Services.*

   a. All offenders are advised in writing at the time of admission to the facility of the guidelines of the co-payment program.

   b. Needed offender health care is not denied due to lack of available funds.

   c. Co-payment fees shall be waived when appointments or services, including follow-up appointments, are initiated by health care staff, including visits for medication renewals and for preventive screenings.

13. Consent for Medical, Surgical, or Special Procedures (4-4397, 4-ACRS-4C-19, 2-CO-4E-01)

   a. Before any invasive medical, surgical, or special procedure is performed on an offender, the offender should give informed consent using the *Health Services Consent to Treatment* 720_F2, *Spanish*.

   b. An offender's refusal to submit to recommended treatment, including repeated non-adherence to prescribed medications (see Operating Procedure 720.5, *Pharmacy Services*), shall be documented on a *Health Services Consent to Treatment; Refusal* 720_F3, *Spanish*.  A medical staff member shall witness the offender's signature; refusal to sign shall be documented by an additional staff witness. (added 4/29/16)

   c. COV §53.1-40.1 and COV §54.1-2986 apply when the offender is not competent to give consent.

   d. When medical staff is not immediately available and the offender refuses to be transported for recommended treatment, a transporting officer shall document the offender's refusal on the *Refusal to Consent to Transport for Medical Treatment* 720_F34.  The transporting officer must witness the offender's signature and forward the *Refusal* to medical; an offender's refusal to sign shall be documented by an additional staff witness. (added 4/29/16)

14. A system to process and evaluate complaints about health care issues shall be provided to offenders. These procedures should be communicated to each offender upon arrival at the facility, normally during the orientation process.

15. Offenders with certain medical conditions may request a Medical Alert on their offender identification card by submitting a request to the facility medical department. (added 8/25/16-effective 10/1/16)

   a. Medical Alerts will only be placed on an offender's Identification Card if requested by the offender and verified by the Health Authority.

   b. The Health Authority or designee will review the offender's Health Record to verify the offender's eligibility and notify appropriate staff to produce an identification card with the Medical Alert.

   c. Alerts will only be issued for the following conditions based on confirmation in the offender's Health Record.

      i. Allergy - Drug

     ii. Allergy - Food
    iii. Allergy - Insect
    iv. Cardiac - AICD
    v. Cardiac - Arrhythmia
    vi. Cardiac - Blood Thinner
   vii. Cardiac - Pacemaker
  viii. Diabetes
    ix. Seizure

d. Offenders shall not be charged a fee for the initial issue of the identification card. Offenders will be charged for the replacement of the identification card if it is lost, stolen, or damaged in accordance with Operating Procedure 802.2, *Offender Finances*.

B. Health Care Complaints

1. Each facility shall evaluate all offender health care complaints.

2. Emergency Complaints

   a. Twenty-four-hour emergency medical services shall be available and complaints handled immediately. Each facility shall have a written plan to provide 24-hour emergency care (see Operating Procedure 720.7, *Emergency Medical Equipment and Care*).

   b. An adequate inventory of first aid kits and emergency medical equipment and supplies should be maintained at all times in accordance with Operating Procedure 720.7, *Emergency Medical Equipment and Care*. Facilities shall provide for on-site emergency first aid, CPR, and crisis intervention.

3. Medical requests should be triaged within 24 hours by a qualified health care professional or health-trained staff, and the offender seen by a qualified health care professional within 72 hours (96 hours on weekends) (4-4346)

   a. For medical complaints deemed to be urgent, a referral shall be made for the offender to see a medical practitioner, and the offender should be seen by the practitioner within 72 hours of the referral.

   b. If the medical complaint is determined to be routine and referral to a medical practitioner is deemed indicated, the offender should be seen by the medical practitioner within two weeks of the referral.

4. Sick Call – The Health Authority at each facility shall develop and provide a system that enables all offenders, (including those in special housing) to request health services daily. These requests are triaged daily by qualified health care professionals or health-trained personnel. The method of requesting health services will be according to the needs of the facility, such as: (4-4344-1, 4-4346) (changed 1/6/17)

   a. Walk in system

   b. Daily rounds in each housing unit

   c. Sign up on sick call request log

   d. Sick call request forms (Health care request forms are readily available to all offenders.)

   e. Have a Corrections Officer call

5. A priority system is used to schedule clinical services. Clinical services should be available to offenders in a clinical setting at least five days a week and are performed by a health care practitioner or other qualified health care professional. (4-4344-1, 4-4346) (changed 1/6/17)

6. The Offender Grievance Procedure is an important component of the facility quality management program.

   a. This process allows an offender to question or express concerns about health care services.

   b. All *Informal Complaints* and *Grievances* submitted in accordance with the Offender Grievance

Procedure are recorded in VACORIS to log and track incoming grievances to assure timely responses.

c.  The facility is responsive to the complaints in a timely and meaningful manner.

d.  The facility performs quantitative and qualitative analysis of grievance data as part of its quality management program.

C.  Special Housing

1.  When an offender is transferred from general population to special housing, health care staff will be informed immediately and will provide a screening and review as indicated by the protocols established by the Health Authority. (4-4400)

a.  Upon notification, the Health Authority shall ensure that a qualified health care professional reviews the offender's Health Record to determine if any known contraindications exist.  The review shall be documented in the *Health Services Complaint and Treatment Form* 720_F17.

b.  Offenders should be screened by a Qualified Mental Health Professional (QMHP) before or within one working day of their placement in special housing so any "at risk" offenders may be identified.

i.   Screenings should be conducted, the MH14A updated if warranted, and special instructions provided if needed, using the *"At Risk" Offender (MH 14A)* 730_F13 in accordance with Operating Procedure 730.5, *Mental Health Services: Behavior Management.*

ii.  At facilities with no QMHP, health trained staff or the nurse should interview the offender within one working day after placement in special housing using the *Special Housing Review* section of the *Health Screening - Health-Trained Staff* 720_F10 to identify if there is any indication the offender may be "at risk" and in need of transfer to a facility with a QMHP.

c.  Unless medical attention is needed more frequently, each offender in segregation receives a daily visit from a qualified health care professional. The visit ensures that offenders have access to the health care system.

i.   The presence of a health care professional in special housing is announced and recorded.

ii.  Medical segregation/ disciplinary segregation /detention checks shall be documented on the *Special Housing: Individual Log* 425_F4 (see Operating Procedure 425.4, *Management of Bed and Cell Assignments*).

iii. The Health Authority shall determine the frequency of physician visits to special housing.

d.  Any in-person assessment or examination of an offender in special housing by a QMHP or other health care professional shall be accomplished in the following manner:

i.   The offender will be restrained by handcuffs behind the back; use of leg irons is optional dependent on security level and the offender's behavior pattern.

ii.  The offender will be instructed to sit on their bunk.

iii. Two certified Corrections Officers and the QMHP/health care professional shall enter the cell to perform the assessment or examination.

iv.  Portable blood pressure equipment, scales, etc. should be available for checking vital signs and for routine assessments and examinations.

v.   If the examination cannot be successfully completed with the hands cuffed behind the offender's back, the QMHP/health care professional should step back and allow the Corrections Officers to move the handcuffs to the front of the offender.  If the examination still cannot be successfully completed, the offender shall be removed from the cell and escorted in appropriate restraints to an area where the examination can be completed.

2.  Each facility shall inform offenders when placed in special housing of procedures to access the health care system for sick call and emergency health care.

3.  All sick call or emergency visits, and medications shall be documented in chronological order and on appropriate forms in the Health Record.

4.  Any "at risk" (see Operating Procedure 730.5, *Mental Health Services: Behavior Management*)

offender placed in a special housing setting should be physically assessed (i.e., weight and vital signs taken and recorded on a *Health Services "At Risk" Physical Assessment* 720_F18, checked for symptoms of possible side-effects to prescribed medication) by a qualified health care professional (i.e., RN, LPN/CNT, or CHA) no less than once every 14 days.

V.   REFERENCES

*Regulations Governing the Practice of Nursing* (added 5/16/16)

Operating Procedure 425.4, *Management of Bed and Cell Assignments*

Operating Procedure 720.4, *Co-Payment for Health Care Services*

Operating Procedure 720.5, *Pharmacy Services*

Operating Procedure 720.7, *Emergency Medical Equipment and Care*

Operating Procedure 730.5, *Mental Health Services: Behavior Management*

Operating Procedure 802.2, *Offender Finances* (added 8/25/16)

VI.   FORM CITATIONS

*Special Housing: Individual Log* 425_F4

*Health Services Consent to Treatment* 720_F2 *Spanish*

*Health Services Consent to Treatment; Refusal* 720_F3 *Spanish*

*Health Screening - Health-Trained Staff* 720_F10

*Health Services Offender Orientation* 720_F16

*Health Services Complaint and Treatment Form* 720_F17

*Health Services "At Risk" Physical Assessment* 720_F18

*Refusal to Consent to Transport for Medical Treatment* 720_F34 (added 4/29/16)

*Laboratory/Diagnostic Test(s) Results* 720_F35 (added 10/27/16)

*"At Risk" Offender (MH 14A)* 730_F13

VII.   REVIEW DATE

The office of primary responsibility shall review this operating procedure annually and re-write it no later than three years from the effective date.

*The office of primary responsibility reviewed this operating procedure in December 2016 and no changes are needed at this time.*

*The office of primary responsibility reviewed this operating procedure in December 2017 and no changes are needed at this time.*

*Signature Copy on File*                                    *10/15/15*
_____    _____
N. H. Scott, Deputy Director of Administration              Date