IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

CURTIS J. GARRETT,
          Plaintiff,

v.                                                                  Civil Action No. 3:20cv986

COMMONWEALTH OF VIRGINIA, et al.,
          Defendants.

## OPINION

The plaintiff, Curtis J. Garrett, a former inmate at Sussex I prison, alleges that two prison guards ordered their patrol dogs to attack him while he stood in his cell on Christmas Day, 2018. After the dogs mauled Garrett's arms and legs, the officers attacked Garrett, too. Because of the injuries he sustained during the attack, Garrett required hospitalization. Upon his return to Sussex I, prison officials placed Garrett in solitary confinement for about five weeks. During that time, Garrett claims he received almost no medical care. As a result, Garrett's wounds became infected. Prison officials did not treat Garrett's infection until he faked his own death.

As Garrett's condition worsened, he asked for a transfer to a hospital. But Sussex I Warden Israel Hamilton and Virginia Department of Corrections ("VDOC") Director Harold W. Clarke ignored that request and transferred Garrett to Wallens Ridge, a facility that had even less capacity for medical care than Sussex I. When he arrived at Wallens Ridge, prison officials confiscated the cane Garrett needed to walk and ultimately refused to accommodate Garrett's injuries.

Garrett continues to suffer from several physical and psychological injuries because of the attack and the poor medical treatment he received at Sussex I and Wallens Ridge. Indeed, in December 2020, Garrett had a mental breakdown that required institutionalization.

Shortly after his institutionalization, Garrett, through counsel, filed his nine-count amended complaint in this action, alleging constitutional, statutory, and common law violations against

myriad defendants, both named and unnamed. Eight of those named defendants—the Commonwealth of Virginia, Hamilton, Clarke, Wallens Ridge Warden Melvin Davis, VDOC Chief of Corrections Operations A. David Robinson, VDOC Statewide Canine Program Coordinator William Barbetto, VDOC Health Services Director Steve Herrick, and VDOC Americans with Disabilities Act ("ADA") Coordinator Barry Marano (collectively, the "moving defendants")—move to dismiss the claims asserted against them in Counts III through IX of Garrett's complaint.[1] For the reasons stated herein, the Court will grant the motion in part and deny it in part. In addition, the Court will grant Garrett leave to file a second amended complaint.

## I. FACTS ALLEGED IN THE AMENDED COMPLAINT

On Christmas Day, 2018, Garrett returned to his cell at Sussex I prison "[a]fter a brief altercation involving a broom handle." (ECF No. 4 ¶ 46.) Garrett closed his cell door and "immediately turned around to present his hands behind his back" so two Patrol Canine Unit officers[2]—Officers Williams and Doe 1—could handcuff him. (*Id.* ¶ 47.) But instead of

---

[1] Garrett alleges the following claims: a § 1983 Eighth Amendment excessive force claim against Williams and Doe 1 (Count I); assault, battery, and intentional infliction of emotional distress against Williams and Doe 1 (Count II); a § 1983 Eighth Amendment supervisory liability claim against Doe 2, Hamilton, Clarke, Robinson, and Barbetto for failing to train their subordinates in the proper use of patrol dogs (Count III); a § 1983 Eighth Amendment supervisory liability claim against Clarke, Robinson, Herrick, Hamilton, Davis, and Does 5-9 for failing to train their subordinates in providing adequate medical care to inmates (Count IV); a § 1983 Eighth Amendment supervisory liability claim against Clarke, Robinson, Marano, Davis, and Doe 10 for failing to train their subordinates in providing disability accommodations to inmates (Count V); a § 1983 Eighth Amendment claim against VDOC, Clarke, Robinson, and Barbetto for failing to change VDOC policies that allowed canine officers to use patrol dogs in a way that violated inmates' Eighth Amendment rights (Count VI); negligence against Hamilton, Doe 2, and Barbetto (Count VII); a § 1983 Eighth Amendment claim against Clarke, Robinson, Herrick, Hamilton, Davis, and Does 3 through 6 for their deliberate indifference to Garrett's serious medical needs (Count VIII); and an ADA claim against VDOC, Davis, and Doe 10 (Count IX). Garrett also seeks an injunction.

[2] "VDOC operates a statewide Canine Program" to help officers "'control [] offenders.'" (*Id.* ¶ 36.) Barbetto "maintains responsibility over both the Canine Program Team policies and its

handcuffing Garrett, the officers "entered the cell and unleashed their canines, ordering them to attack Mr. Garrett." (*Id.* ¶ 51.) While the dogs "bit Garrett's left arm and right leg," the officers "punched and kicked Mr. Garrett repeatedly." (*Id.*)

After Garrett "collapsed to the ground under the force of the Patrol Canine Unit's attack," the officers lifted Garrett "up without ordering the canines to release their hold on Mr. Garrett's arm and leg." (*Id.* ¶ 52.) When the officers lifted Garrett off the ground, the dogs "sank their teeth deeper into Mr. Garrett's arm and leg" and hung "in the air, still attached to Mr. Garrett by their teeth." (*Id.*) "While the canines' jaws clenched down on Mr. Garrett's left arm and right leg," the officers "slammed Mr. Garrett's body against the wall of his cell" before finally handcuffing him. (*Id.* ¶ 53.)

"Severely injured from the attack, Mr. Garrett was transported to the emergency department at Southside Regional Medical Center [("Southside")], where an attending physician disinfected the bite wounds and gave him stitches." (*Id.* ¶ 54.) The physician left the deep wound open to drain and heal. The "extensive nerve damage caused by the canine attack" left Garrett with "no sensation or control over his dominant left hand" and made his right leg "a 'dead leg' that was almost completely numb." (*Id.* ¶¶ 55-56.) "Bearing weight on his right foot caused [Garrett] searing pain that radiated up his leg," so "[t]he hospital provided Mr. Garrett with a cane to assist with ambulation and balance." (*Id.* ¶¶ 56-57.)

The physician who treated Garrett at Southside ordered that Garrett receive follow-up treatment in the days and weeks after his discharge, but Garrett did not receive the follow-up

---

individual officers." (*Id.*) VDOC issued, and Clarke, Robinson, and Barbetto approved, the operating procedures for using dogs to control prisoners. The operating procedures "do not provide meaningful guidance or restrictions on the use of canines because" the procedures use vague terms. (*Id.* ¶ 43.) "As a result, the use of canines to attack prisoners under the guise of managing behavior in VDOC facilities is systemic." (*Id.*)

3

treatment as ordered. "Instead, he was removed from the general population and placed in solitary confinement for approximately five weeks with almost no medical care." (*Id.* ¶ 61.) "While in solitary confinement, no medical staff or personnel agreed to change Mr. Garrett's bandages, despite his repeated requests for assistance and pleas to visit the Medical Department per the attending physician's orders." (*Id.* ¶ 62.)

Because Garrett could not dress his wounds himself, they "began to fester and discharge greenish fluid." (*Id.* ¶ 64.) On January 7, 2019, after not having his bandages changed since December 28, 2018, Garrett requested a transfer "to the medical unit at Powhatan Corrections so that he could receive proper care for his still-open and now clearly infected wounds." (*Id.* ¶ 65.) After nearly "another week in solitary confinement without having his wounds cleaned or bandages changed," Garrett's infection worsened. (*Id.* ¶ 66.) Only after Garrett faked his own death did he receive medical assistance.[3]

On January 31, 2019, "Garrett was transferred to Wallens Ridge, a nonmedical facility located nearly 400 miles away [from Sussex I] on the border of Kentucky." (*Id.* ¶ 74.) Clarke and Hamilton approved Garrett's transfer to Wallens Ridge even though they knew the facility could not provide Garrett the medical care he needed. Upon his arrival at Wallens Ridge, Garrett "was held in medical segregation," where "he received minimal treatment." (*Id.* ¶ 78.) In fact, the Wallens Ridge staff "confiscated Mr. Garrett's brown walking cane and failed to timely provide him with any ambulatory assistive advices that would have allowed him" to move about independently. (*Id.* ¶ 80.)[4] Moreover, three days into his stay at Wallens Ridge, Doe 4 told Garrett

---

[3] This assistance proved temporary. "After another week in isolation without daily bandage changes and wound cleaning . . . Garrett's wounds became reinfected." (*Id.* ¶ 71.)

[4] Garrett's inability to walk around independently occasionally caused him to miss the daily administration of Cymbalta, the drug prescribed "to address his acute nerve pain." (*Id.* ¶ 82.)

"that he would have to change his dressings himself going forward. As a result, Mr. Garrett developed another infection." (*Id.* ¶ 78.)

In February 2019, Sergeants Rutherford and Thomas, prison officials at Wallens Ridge, signed an accommodation form that allowed Garrett to have his meals brought to "his cell so that he did not have to hobble to the dining area to receive his food." (*Id.* ¶ 83.) But about two months later, Rutherford "reversed course and denied Mr. Garrett a breakfast meal due to his inability to walk to the 'chow hall,'" even though Garrett showed him the accommodation form that he had previously signed. (*Id.* ¶ 84.) Garrett "submitted a grievance regarding his missed meal," but Unit Manager J. Stallard claimed "that the Medical Department had never found Mr. Garrett to need any such accommodations related to ambulation." (*Id.* ¶ 85.)

In addition, although the Southside staff reissued a prescription to have Garrett "brought in for a follow-up appointment with a specialist and Mr. Garrett's repeated requests for the same, Mr. Garrett continued to be denied access to an orthopedic surgeon or specialist to address the severe nerve damage in his leg and arm resulting from the canine attack." (*Id.* ¶ 86.) The staff at Wallens Ridge continued to provide inadequate medical care to Garrett up until his release date. Indeed, "[w]hen Mr. Garrett was finally released [from Wallens Ridge] in May 2019, he was forced to walk on his injured right leg without a cane for over half a mile to reach the transportation truck home." (*Id.* ¶ 87.)

Garrett's "physical condition has not improved" since his release. (*Id.* ¶ 88.) His doctor has told him that he likely will not "regain feeling and mobility in his left dominant hand," and "[h]e still walks with a crutch." (*Id.*) His mental condition has also worsened "substantially" after the attack and subsequent lack of medical treatment while in prison. (*Id.* ¶ 89.) Garrett suffers from PTSD, major depression, and insomnia "due to recurring nightmares of the attack." (*Id.*) In

addition, Garrett "self-isolates in his room and at times panics because he thinks he hears dogs barking outside his door." (*Id.*) On December 2, 2020, "Garrett was institutionalized at Tucker Mental Institution . . . for a mental breakdown caused by trauma associated with the canine attack and its aftermath." (*Id.* ¶ 90.)

## II. ANALYSIS[5]

### A. *Counts III, IV, V, and VI (§ 1983 Supervisory Liability Claims)*

Garrett brings Counts III, IV, V,[6] and VI as supervisory liability claims. (ECF No. 43, at 10.) To succeed on a § 1983 supervisory liability claim, a plaintiff must show:

> (1) that the supervisor had actual or constructive knowledge that [his] subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff;[7]

---

[5] The moving defendants move to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). A motion under Rule 12(b)(1) tests the court's subject matter jurisdiction. The plaintiff bears the burden of proving proper subject matter jurisdiction as the party asserting jurisdiction. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982).

A Rule 12(b)(6) motion gauges a complaint's sufficiency without resolving any factual discrepancies or testing the claims' merits. *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In considering the motion, a court must accept all allegations in the complaint as true and must draw all reasonable inferences in the plaintiff's favor. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009).

The principle that a court must accept all allegations as true, however, does not apply to legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a Rule 12(b)(6) motion to dismiss, a complaint must state facts that, when accepted as true, state a facially plausible claim to relief. *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

[6] Garrett clarifies that Counts III, IV, and V "are rooted not in the policies themselves." (ECF No. 43, at 11.) Thus, the Court does not assess these claims' viability as *Monell*-style inadequate customs or policies claims.

[7] A prison official must have "'actual subjective awareness' of an excessive risk of harm or safety" for liability to attach under the Eighth Amendment. *Sharp v. Heart*, No. 2:18cv1056, 2018 U.S. Dist. LEXIS 178524, at *7 (S.D.W. Va. Sept. 21, 2018). "Thus, a prison official cannot be held liable for the failure to alleviate a risk that he should have perceived[] but did not in fact perceive." *Id.*

6

> (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices,"; and
>
> (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular injury suffered by the plaintiff.

*Wilkins v. Montgomery*, 751 F.3d 214, 226 (4th Cir. 2014) (quoting *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994)).

To adequately plead the first element, a plaintiff must allege "that the conduct is widespread, or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm of constitutional injury." *Id.* (quoting *Shaw*, 13 F.3d at 799). A plaintiff "may establish deliberate indifference by demonstrating a supervisor's continued inaction in the face of documented widespread abuses." *Id.* (quoting *Shaw*, 13 F.3d at 799). Finally, "proof of causation may be direct . . . where the policy commands the injury of which the plaintiff complains . . . or may be supplied by the tort principle that holds a person liable for the natural consequences of his actions." *Id.* (quoting *Shaw*, 13 F.3d at 799).

In Count III, Garrett asserts a supervisory liability claim against Hamilton, Clarke, Robinson, and Barbetto for their failure to train their subordinates on the proper use of patrol dogs. In Count IV, Garrett asserts a supervisory liability claim against Clarke, Robinson, Herrick, Hamilton, and Davis for failing to ensure that their subordinates provided him adequate healthcare. In Count V, Garrett asserts a supervisory liability claim against Clarke, Robinson, Marano, and Davis for failing to ensure that their subordinates provided reasonable accommodations to prisoners with disabilities. And in Count VI, Garrett asserts a supervisory liability claim against VDOC, Clarke, Robinson, and Barbetto for allowing VDOC's policies regarding the use of patrol dogs "to remain in place unchecked," even though they had "actual or constructive knowledge of the widespread abusive conduct of using canines to attack prisoner." (ECF No. 4 ¶ 200.)

7

The moving defendants contend that Garrett has inadequately pled the first element of his supervisory liability claims, arguing that "[t]hese supervisory liability claims all fail for the same reason: Garrett fails to allege facts to show that the named defendants in each claim knew or should have known about pervasive problems with each topic area." (ECF No. 49, at 4.) They also argue that Garrett has not identified any specific prior instance in which VDOC officials used patrol dogs to attack prisoners, denied inmates adequate medical care, or failed to provide disability accommodations.

As described below, Garrett's amended complaint contains sufficient factual allegations for his claims regarding patrol dogs to survive (Counts III and VI). His amended complaint does not, however, contain sufficient factual allegations for his claims regarding medical care (Count IV) and disability accommodations (Count V) to survive.

*1. Count III*

Garrett alleges that "well before" the date of his attack, "canine officers at Sussex I have engaged in the pervasive conduct of using patrol dogs to attack prisoners when there is no legitimate penological justification for doing so, in violation of the prisoners' Eighth Amendment right to be free from cruel and unusual punishment." (ECF No. 4 ¶ 164.) Most of Garrett's amended complaint contains nothing more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678. This "do[es] not suffice" to survive a motion to dismiss. *Id.* But Garrett *does* allege that "[p]risoners in facilities *throughout the state*[8] have described canine attacks similar to the one experienced by Mr. Garrett."

---

[8] At this stage of the litigation, the Court can plausibly infer that facilities throughout the state include Sussex I and Wallens Ridge.

(ECF No. 4 ¶ 43 (emphasis added).)[9] Thus, Garrett has adequately pled that the conduct of which he complains "is widespread . . . and . . . poses an unreasonable risk of harm of constitutional injury." *Wilkins*, 751 F.3d at 226.

Garrett also makes multiple allegations to support his contention that Hamilton, Clarke, Robinson, and Barbetto had prior knowledge of these problems. For instance, Garrett alleges that VDOC Operating Procedure 435.3 requires VDOC employees to note "any incident involving a canine bite . . . in a Canine Bite Report in the Dog Information Governance & Operation System (DINGO)." (*Id.* ¶ 93.) VDOC employees must include photographs of any injuries in the Canine Bite Report. Hamilton and Barbetto receive these reports. Thus, Garrett contends that because he alleges that dogs have attacked prisoners many times before his attack, (*id.* ¶ 43), Hamilton and Barbetto "knew or should have known about" previous instances of dogs attacking Sussex I prisoners. (*Id.* ¶ 95.) This demonstrates that Hamilton and Barbetto had constructive knowledge of prior dog attacks. *See Jones v. Murphy*, 470 F. Supp. 2d 537, 546 (D. Md. 2007) ("Constructive notice can be alleged in multiple ways, including the existence of written reports of conditions at a detention facility . . . .").

In addition, Garrett has adequately pled that Clarke and Robinson had constructive knowledge of prior dog attacks by noting their "high level of responsibility" for training and supervising VDOC employees.[10] *Jones*, 470 F. Supp. 2d at 546 ("Constructive notice can be

---

[9] Garrett does not specify when these prior dog attacks occurred, but, at this stage of the litigation, the Court can reasonably infer that they happened on the moving defendants' watch. *Cf. Doe v. Roe*, 295 F. Supp. 3d 664, 677 (E.D. Va. 2018) ("On a motion to dismiss, the law requires that the factual allegations in the complaint are taken as true and that every plausible inference is granted in favor of the plaintiff.").

[10] (*See, e.g.*, ECF No. 4 ¶ 103 ("As Director of VDOC, Defendant Clarke serves as the official governing authority for VDOC and holds ultimate responsibility for training, supervising, and disciplining VDOC corrections officers."), ¶ 104 ("As the Chief of Corrections Operations for

9

alleged in multiple ways, including . . . a supervisor's high level of responsibility coupled with the violations alleged to have occurred on her or his watch.").[11]

Garrett has adequately pled the second element of a supervisory liability claim (deliberate indifference) by alleging that the moving defendants did "nothing" to stop VDOC officers' repeated use of unconstitutional excessive force. (ECF No. 4 ¶ 165; *see also id.* ¶¶ 100-01, 106-08.).) Finally, Garrett plausibly alleges a causal link between his injuries and the moving defendants' deliberate indifference to VDOC officers' use of excessive force against inmates by alleging that the defendants could have prevented his injuries by properly supervising and training their subordinates regarding the proper use of patrol dogs and disciplining them for their failure to properly use patrol dogs. (*See id.* ¶¶ 99-101, 105-08, 165-66.) Accordingly, Count III survives at this stage of the case.

### 2. *Count IV*

Garrett has alleged that "well before" the date of his attack, "Medical Departments at Sussex I and Wallens Ridge have engaged in the pervasive conduct of denying medical care to prisoners or providing inadequate health[care] to prisoners in violation of the prisoners' Eighth Amendment right to be free from cruel and unusual punishment." (ECF No. 4 ¶ 178.) But he alleges no facts to support the supposed pervasiveness of this conduct. Instead, Garrett's allegations center on the defendants' failure to take measures to ensure that their subordinates provided him adequate medical care for the injuries caused by the December 25, 2018 dog attack.

---

VDOC, Defendant Robinson leads VDOC facilities and holds ultimate responsibility for training, supervising, and disciplining VDOC corrections officers.").)

[11] *See also id.* ("The plaintiffs also thoroughly set out allegations regarding the Wardens' authority and various duties of training, supervising, disciplining, and formulating and implementing policy . . . , as well as the widespread violations at [the Central Booking and Intake Center] . . . , thereby alleging constructive notice through this avenue as well.").

He cannot pursue this *respondeat superior* theory under § 1983. *Spell v. McDaniel*, 824 F.2d 1380, 1385 (4th Cir. 1987).

### 3. Count V

Count V fails for the same reason as Count IV.

### 4. Count VI

The defendants argue that the Court should dismiss Count VI because Garrett's claim lacks "any specific factual support or any specific incident showing that these supervisory defendants should have known that their subordinates were acting unconstitutionally and nevertheless failed to take action." (ECF No. 35, at 29.)[12]

Garrett has adequately pled a supervisory liability claim in Count VI. For the reasons stated above, he adequately pled that the conduct of which he complains "is widespread . . . and . . . poses an unreasonable risk of harm of constitutional injury." *Wilkins*, 751 F.3d at 226. He has also pled the second element of a supervisory liability claim by alleging that the moving defendants failed to use their policy-making authority "to end the indiscriminate use of [patrol dogs] against inmates securely housed in [their] cells." *Slakan v. Porter*, 737 F.2d 368, 375 (4th Cir. 1984) (affirming judgment against the North Carolina Secretary of Corrections when he failed to "provide proper guidance" and "adequate direction" regarding the use of water hoses against prisoners despite knowing that correctional officers regularly "hos[ed]" inmates). Finally, Garrett plausibly alleges a causal link between the moving defendants' failure to change the canine policy and his injuries

---

[12] The defendants correctly note that "Garrett cannot bring an Eighth Amendment claim against VDOC because VDOC—as a state agency—is not a 'person' amenable to suit under 42 U.S.C. § 1983. *See, e.g., Trisler v. Prison Health Serv[]s., Inc.*, No. 3:11cv343, 2013 WL 3894866, at *1 (E.D. Va. July 26, 2013) (holding that 'VDOC is not a person within the meaning of 42 U.S.C. § 1983' and dismissing plaintiff's claims against VDOC with prejudice)." (ECF No. 35, at 25.) Accordingly, the Court will dismiss Count VI as to VDOC.

by claiming that "permit[ting] these policies to remain in place unchecked . . . show[ed] . . . tacit approval" of indiscriminate and excessive dog attacks. (ECF No. 4 ¶ 200.)

\* \* \*

For these reasons, the Court will deny the moving defendants' motion as to Count III and grant the motion as to Count IV and V. The Court will grant their motion as to Garrett's claim against VDOC in Count VI, but it will deny their motion in all other respects as to Count VI.

### B. *Count VII (Negligence)*

Garrett brings a negligence claim against Hamilton and Barbetto for failing "to use ordinary care and skill in directing corrections officers to avoid excessive force" against prisoners. (*Id.* ¶ 208.) The defendants ask the Court to dismiss this claim because "Virginia law does not recognize a claim for negligent supervision," and "Hamilton and Barbetto are entitled to sovereign immunity." (ECF No. 35, at 29.)

#### *1. Negligent Supervision*

"[F]ederal and Virginia Courts have held that Virginia does not recognize negligent supervision as a valid cause of action." *A.H. v. Church of God in Christ, Inc.*, 297 Va. 604, 630, 831 S.E.2d 460, 475 (2019) (quoting *Eley v. Evans*, 476 F. Supp. 2d 531, 532 n.3 (E.D. Va. 2007)). But when a plaintiff alleges that a defendant violated his independent duty to administer a correctional program—here, the Canine Program—he does not allege a claim for negligent supervision. *See Adams v. NaphCare, Inc.*, 244 F. Supp. 3d 546, 551 (E.D. Va. 2017) (holding that the administrator of the estate of the decedent ("Mitchell") asserted a plausible claim against the Health Services Administrator ("Thomas") at Hampton Roads Regional Jail ("HRRJ") when he argued that Thomas "had an independent 'duty and opportunity' to affect the jail's medical

12

care, not through supervising others, 'but by independently acting as an administrator'").[13] Because Garrett plausibly alleges that Hamilton and Barbetto violated their independent duty to administer the Canine Program, he has pled a viable negligence claim. But, as explained below, sovereign immunity bars his claim.

*2. Sovereign Immunity*

Sovereign immunity protects Hamilton and Barbetto from simple negligence claims, but not gross negligence claims. *Green v. Ingram*, 269 Va. 281, 290, 608 S.E.2d 917, 922 (2005). "[G]ross negligence is 'that degree of negligence which shows indifference to others as constitutes an utter disregard of prudence amounting to a complete neglect of the safety of [another]. It must be such a degree of negligence as would shock fair minded [people] although something less than willful recklessness.'" *Id.* at 290-91, 608 S.E.2d at 922 (quoting *Ferguson v. Ferguson*, 212 Va. 86, 92, 181 S.E.2d 648, 653 (1971)). "Several acts of negligence which separately may not amount to gross negligence, when combined[,] may have a cumulative effect showing a form of reckless or total disregard for another's safety." *Chapman v. City of Virginia Beach*, 252 Va. 186, 190, 475 S.E.2d 798, 801 (1996). Juries normally decide whether a plaintiff has established gross negligence. *Id.*

Although he does not explicitly allege a gross negligence claim in his amended complaint,[14] Garrett nonetheless contends that he has sufficiently pled a claim of gross negligence because, "despite being consistently apprised of the many incidents of canine attacks, the

---

[13] *See also id.* ("[T]he plaintiff 'plausibly asserts that Thomas owed a duty to Mitchell to see that he was provided quality and appropriate medical care,' and the Complaint 'permits the plausible inference that Thomas was familiar with the care provided to each inmate at HRRJ, since it was part of her job to evaluate that very thing.'").

[14] In fact, he does not mention gross negligence at all.

13

Defendants intentionally or recklessly did not amend VDOC's Operating Procedures and Canine Program or otherwise augment the training and discipline of VDOC canine officers to address these incidents." (ECF No. 43, at 35.) Stated differently, he claims that "'fair minded people' would be 'shocked' to find that a prison official with a full view of the repeated attacks by canine officers would choose to disregard repeated infractions that led to serious injuries of multiple incarcerated persons." (*Id.* (quoting *Green*, 269 Va. at 290, 608 S.E.2d at 922).)

By making this argument now, Garrett essentially attempts to amend his amended complaint in which he alleged *not* that the moving defendants showed "an utter disregard of prudence," *Ferguson*, 212 Va. at 92, 181 S.E.2d at 653, *but rather* that they "failed to use *ordinary* care," (ECF No. 4 ¶ 208).[15] A failure to use ordinary care does not amount to gross negligence. *See, e.g., Sturman v. Johnson*, 209 Va. 227, 235, 163 S.E.2d 170, 176 (1968) ("Negligence is the failure to use ordinary care. Gross negligence is that degree of negligence which shows an utter disregard of prudence amounting to complete neglect for the safety of another."). Garrett cannot turn the simple negligence claim pled in his amended complaint into a gross negligence claim through his brief opposing the moving defendants' motion to dismiss. *S. Walk at Broadlands Homeowner's Ass'n v. Openband at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013) ("It is well-established that parties cannot amend their complaints through briefing or oral advocacy.").

---

[15] Plaintiffs generally plead gross negligence and negligence separately. *See, e.g., Kelly v. Varnell*, 86 Va. Cir. 262, 263, 2013 Va. Cir. LEXIS 43, at *2 (Norfolk 2013) (noting that the plaintiff "expressly alleges gross negligence and not ordinary negligence"); *Foret v. Kellogg, Brown & Root Servs.*, 79 Va. Cir. 76, 78, 2009 Va. Cir. LEXIS 262, at *3 (Chesapeake 2009) (plaintiffs pled negligence and gross negligence separately). This makes sense because a gross negligence claim implicates different legal principles than a simple negligence claim.

14

Because Garrett has not pled a gross negligence claim, sovereign immunity protects Hamilton and Barbetto. Virginia courts consider the following factors to determine if sovereign immunity applies:

    1. the nature of the function performed by the employee;
    2. the extent of the state's interest and involvement in the function;
    3. the degree of control and direction exercised by the state over the employee; and
    4. whether the act complained of involved the use of judgment and discretion.

*Messina v. Burden*, 228 Va. 301, 313, 321 S.E.2d 657, 663 (1984). Garrett challenges only the moving defendants' satisfaction of the fourth factor, arguing that the acts he complains of did not require Hamilton and Barbetto to use judgment and discretion. This argument fails. *See Hales v. City of Newport News*, No. 4:11cv28, 2011 U.S. Dist. LEXIS 112714, at *14 (E.D. Va. Sept. 30, 2011) (finding that the Newport News police chief's and city manager's "decisions regarding training and supervision of subordinate police officers undeniably involve the exercise of their judgment and discretion").

      \*    \*    \*

For these reasons, the Court will grant the moving defendants' motion to dismiss Count VII as to Hamilton and Barbetto because sovereign immunity shields them from Garrett's simple negligence claim.

### *C. Count VIII (§ 1983 Direct Liability Claim)*

Garrett brings a § 1983 claim against Clarke, Robinson, Herrick, Hamilton, and Davis, alleging that they "were deliberately indifferent to Mr. Garrett's ongoing medical needs and engaged in behaviors done for the very purpose of causing harm or with knowledge that harm will result." (ECF No. 4 ¶ 212.) The defendants argue that

> there is nothing in Garrett's Amended Complaint to indicate that Defendants Clarke, Robinson, Herrick, Hamilton, and Davis somehow denied Garrett medical treatment, deliberately interfered with a prison doctor's treatment, or tacitly

15

> authorized or were indifferent to a physician's misconduct, or even that they contemporaneously knew that his medical care was somehow inadequate.

(ECF No. 35, at 34.) The defendants further contend that "Count VIII seeks to hold Robinson, Herrick, Davis, and Hamilton liable for Garrett's medical treatment solely because they allegedly failed to follow VDOC's OP 720.1, *Access to Health Services* or because they transferred him to another VDOC facility with a medical segregation unit." (*Id.*)

"The deliberate-indifference standard has two components. The plaintiff must show that he had serious medical needs, which is an objective inquiry, and that the defendant acted with deliberate indifference to those needs, which is a subjective inquiry." *Heyer v. U.S. Bureau of Prisons*, 849 F.3d 202, 209-10 (4th Cir. 2017). "A 'serious medical need' is a condition 'diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *DePaola v. Clarke*, 884 F.3d 481, 486 (4th Cir. 2018) (quoting *Heyer*, 849 F.3d at 210). A plaintiff can demonstrate deliberate indifference in several ways. *See Scinto v. Stansberry*, 841 F.3d 219, 226 (4th Cir. 2016) (describing the myriad ways a plaintiff can show deliberate indifference). For instance, a plaintiff may assert "a medical treatment claim . . . against non-medical personnel" if "they were personally involved with a denial of treatment, deliberately interfered with prison doctors' treatment, or tacitly authorized or were indifferent to the prison physicians' misconduct." *Lewis v. Angelone*, 926 F. Supp. 69, 73 (W.D. Va. 1996).

Here, Garrett alleges enough facts against Hamilton and Clarke to survive a motion to dismiss. Garrett alleges that Hamilton and Clarke "approved Mr. Garrett's transfer to Wallens Ridge, knowing and disregarding the risk of harm that would result from confining him to a nonmedical facility despite his recent return from the hospital and need for prolonged medical care." (ECF No. 4 ¶ 212(a).) In other words, he alleges that "they were personally involved with

16

a denial of treatment" by approving his transfer from Sussex I to a facility where they knew he would not have access to adequate medical care. At this stage of the litigation, this states a claim for deliberate indifference to a serious medical need. *See Lewis*, 926 F. Supp. at 73.

But as to Davis, Robinson, and Herrick, Garrett makes only conclusory allegations that closely resemble the supervisory liability claims that he brought in Count IV against Clarke, Robinson, Herrick, Hamilton, and Davis. Regarding Davis, he claims only that, "despite having responsibility for ensuring that prisoners within Wallens Ridge 'have timely access to, and are provided health care services,' [Davis] failed to ensure that Mr. Garrett had timely and adequate access to medical care." (ECF No. 4 ¶ 212(k).) And as to Robinson and Herrick, he claims only that, "despite possessing a duty to do so, [Robinson and Herrick] failed to provide or ensure that Mr. Garrett had timely and adequate access to medical care." (*Id.* ¶ 212(l).) These conclusory allegations do not state what actions Davis, Robinson, or Herrick took to deny Garrett medical care. Accordingly, the Court will dismiss Count VIII as to Davis, Robinson, and Herrick.

### D. Count IX[16] *(ADA Violation)*

In Count IX, Garrett sues VDOC and Davis for ADA violations. The moving defendants claim that the Virginia Rights of Persons with Disability Act's one-year statute of limitations bars Garrett's ADA claim. *See A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 347 (4th Cir. 2011) (borrowing the Virginia Rights of Persons with Disability Act's one-year statute of limitations because "Title II of the ADA does not contain a statute of limitations"). In addition, the moving defendants assert that "Garrett's ADA claim against Defendant Davis should be dismissed in its entirety because there is no individual liability for violations of the ADA." (ECF No. 35, at 35.)

---

[16] Garrett misnumbers this as Count VI in his amended complaint.

17

*1. Statute of Limitations*

Garrett says that his ADA "claim arises under the ADA Amendments Act of 2008 [("ADAAA")]. Accordingly, the statute of limitations is governed by the four-year statute of limitations under the 1990 Civil Justice Reform Act ('CJRA')." (ECF No. 43, at 29.) The Court agrees.

Section 1658(a) of title 28 of the United States Code provides that, "[e]xcept as otherwise provided by law, a civil action arising under an Act of Congress enacted after the date of the enactment of this section [enacted December 1, 1990,] may not be commenced later than 4 years after the cause of action accrues." "[A] cause of action 'aris[es] under an Act of Congress enacted' after December 1, 1990—and therefore is governed by § 1658's 4-year statute of limitations—if the plaintiff's claim against the defendant was made possible by a post-1990 enactment." *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 382 (2004). Here, the ADAAA made Garrett's claim possible by expanding the definition of qualifying disabilities under the ADA such that it now includes conditions like Garrett's limping. *Compare Wilson v. Bd. of Educ.*, No. 12cv2092, 2013 U.S. Dist. LEXIS 85052, at *15-16, 18, 20-21 (D. Md. June 18, 2013) (noting that Congress "liberaliz[ed] the standard used to establish disability under the ADA" when it passed the ADAAA so that it covers "left foot neuropathy"[17]), *with Talk v. Delta Airlines, Inc.*, 165 F.3d 1021, 1025 (5th Cir. 1999) ("It is clear, however, that moderate difficulty experienced while walking does not rise to the level of a disability."). Accordingly, the four-year statute of limitations applies, and

---

[17] "Peripheral neuropathy . . . often causes weakness, numbness and pain, usually in your hands and feet." *Peripheral Neuropathy*, Mayo Clinic (July 21, 2021), https://www.mayoclinic.org/diseases-conditions/peripheral-neuropathy/symptoms-causes/syc-20352061. Garrett alleges that he has right foot neuropathy. (*See* ECF No. 4 ¶ 56.)

Garrett has timely filed his lawsuit. That said, the Court will direct Garrett to replead his ADA claim to make it clearer that the ADAAA made his claim possible.

*2. Individual Liability under the ADA*

In *Latson v. Clarke*, 249 F. Supp. 3d 838 (W.D. Va. 2017), the court dismissed the plaintiff's ADA claims against VDOC employees in their official capacity as duplicative of the plaintiff's claims against VDOC itself. *Id.* at 855-56. This Court will do the same here regarding Garrett's ADA claim against Davis in his official capacity.

### E. Injunctive Relief

Garrett asks the Court to "[p]ermanently enjoin and estop VDOC policies that permit, condone, and ratify canine attacks on prisoners." (ECF No. 4, at 51.) The defendants claim that "Garrett lacks standing to seek an injunction because he has been released from prison." (ECF No. 35, at 10.) Because Garrett has left prison and has not shown "a sufficient likelihood that he will again be wronged in a similar way," *Los Angeles v. Lyon*, 461 U.S. 95, 111 (1983), the Court will dismiss Garrett's request for an injunction. *See Rendelman v. Rouse*, 569 F.3d 182, 186 (4th Cir. 2009) ("[A]s a general rule, a prisoner's transfer or release from a particular prison moots his claims for injunctive and declaratory relief with respect to his incarceration there.").

### III. CONCLUSION

For the foregoing reasons, the Court will deny in part and grant in part the moving defendants' motion to dismiss.

The Court will issue an appropriate Order.

Let the Clerk send a copy of this Opinion to all counsel of record.

Date: 28 Jul 2021
Richmond, VA

/s/
John A. Gibney, Jr.
United States District Judge