IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

CURTIS J. GARRETT,

    Plaintiff,

v.                                                         CASE NO. 3:20cv986

COMMONWEALTH OF VIRGINIA, *et al.*,

    Defendants.

## REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANTS' PARTIAL MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

Defendants Matthew Franklin, Christopher Shy, Director Harold W. Clarke, A. David Robinson, Barry Marano, Warden Carl Manis, Warden Israel Hamilton, William Barbetto, and VDOC, by counsel, submit the following Reply to Plaintiff's Response in Opposition to Defendants' Partial Motion to Dismiss the Second Amended Complaint.

## Introduction

Defendants have raised multiple arguments in support of their Partial Motion to Dismiss Plaintiff's Second Amended Complaint and submit this reply in order to respond specifically to Plaintiff Curtis Garrett's arguments opposing Defendants' Motion. Unless otherwise stated in this Reply, Defendants stand by all other arguments made in support of their Partial Motion to Dismiss.

First, Defendants Shy and Franklin withdraw their statute of limitations defense regarding Count I, the Eighth Amendment excessive force claim. Upon Counsel's review of Plaintiff's Response, Counsel for Franklin and Shy realized that she had inadvertently relayed incorrect information to Plaintiff's Counsel concerning former Defendant Williams. Because Plaintiff and his Counsel relied upon that incorrect information to their detriment and ostensibly to Franklin and

Shy's benefit, Counsel believes it is only fair to withdraw the statute of limitations defense as to these defendants at this time. Counsel for Defendants has conveyed this information to Counsel for Plaintiff. Accordingly, Defendants make no further argument on the timeliness of Count I.

Second, Defendants deem as withdrawn any of Garrett's state law claims that Defendants previously argued were time barred. This includes Count II (a Virginia state law claim against Franklin and Shy for assault and battery and intentional infliction of emotional distress) and Count VII (a gross negligence claim against Defendants Hamilton and Barbetto based on their purportedly inadequate administration of VDOC's canine program). Garrett offered no response to Defendants' arguments on these counts, and thus any opposition is deemed waived. Moreover, in his Proposed Third Amended Complaint, Garrett does not re-assert any state claim claims, presumably because he agrees they are not timely. Defendants thus do not make any further argument regarding the timeliness of Count II and Count VII.

Third, Defendant Manis maintains his statute of limitations defense as to Counts IV, V, and VIII and maintains that the Second Amended Complaint ("SAC") does not sufficiently relate back to Manis such that its filing was timely. Even adopting Garrett's legal framework for the analysis of the timeliness of Counts IV, V, and VIII as to Manis, the Second Amended Complaint should not have included any claim against Manis. Garrett's argument that the claims are timely center around the fact that Manis was the warden at Wallens Ridge while Garrett was incarcerated there, and somehow, via the purported review of Garrett's grievances two years ago, should have concluded he was going to be sued. This argument is irrational on its face, but that is beside the point. Even if Manis should have known that he was going to be sued and even if the relation back doctrine of Rule 15(c) does apply, Garrett's lack of diligence in identifying and naming Manis as a defendant should preclude any claims against him pursuant to Rule 15(a). It was not until August

3, 2021, that Counsel for Garrett even inquired who the Wallens Ridge warden was at the time Garrett was housed there, despite suing the present warden in December 2020. Counsel for Defendants disclosed this information on the same day, and Garrett filed his Second Amended Complaint naming Manis on August 18, 2021. Garrett did not even ask who the proper defendant was until August 3, 2021, nearly eight months after filing his Original Complaint and months after the statute of limitations had already run.[1] While this lack of knowledge may not come into play under Rule 15(c), it certainly does under Rule 15(a). These claims against Manis are time barred and should be dismissed.

Fourth, in Count V, Garrett attempts to state an Eighth Amendment supervisory liability claim based the defendants' subordinates' violation of the ADA. For the reasons outlined in Defendants' opening brief, this is not proper. Garrett's arguments to the contrary are not persuasive and are not proper based on plain instruction from the Fourth Circuit.

Fifth and finally, in Count IX, Garrett seeks to recover money damages from VDOC based on his allegation that he had moderate difficulty walking and thus missed a breakfast meal and "several" doses of medication. Garrett's previously filed Response in Opposition to Defendants' Motion to Dismiss (Dkt. No. 43) specifically argued that his ADA claim was made possible by the ADA Amendments Act ("ADAAA") of 2008, not the original ADA as enacted in 1990. He did so because if he had not, the one-year statute of limitations would have passed as to any claim based on the ADA. Garrett now seeks to have the benefit of the ADAAA's four-year statute of limitations – which permits him to proceed on his claim that his moderate difficulty walking and limping – as well as the benefits he could have had had he asserted that the violation of the ADA was more egregious or based on a more severe impairment than moderate difficulty ambulating. Garrett's

---

[1] Ultimately, it is Plaintiff's job to identify the proper defendants, not Defense Counsel's.

moderate difficultly with ambulation (and his allegation that he was denied a cane or meals in his cell and thus missed a meal and "several" doses of medication) falls far short of any sort of corresponding Eighth Amendment claim. This is so for several reasons, first, as Defendants argued in their opening brief in support of their Partial Motion to Dismiss, Garrett's allegations fail to establish that any person was "deliberately indifferent" to his serious medical needs. Garrett alleges only that the lack of a cane or having meals brough to his cell resulted in pain and difficulty walking to get his meals and medications. He does not allege that he was prohibited from receiving constitutionally adequate nutrition or medical care as he must for purposes of an Eighth Amendment claim. Nor does the SAC contain facts to show how Defendants' purported failure to accommodate Garrett from April 8, 2019 until his release on May 20, 2019, exposed Garrett to a risk of serious harm for purposes of an Eighth Amendment claim. Instead, Garrett pivots and attempts to assert that his alleged *current* symptoms suffice to show that he was harmed by the conduct of staff at Wallens Ridge. Nothing in the SAC links the purported lack of a cane or meals in his cell to any injury that was *caused* by these purported deprivations. Because Garrett's SAC fails to allege a violation of the ADAAA that also alleges conduct that violated the United States Constitution, his claims for money damages on this issue are barred by VDOC's sovereign immunity.

## Legal Argument

A. *Counts IV, V, and VIII Against Defendant Manis are Time Barred*

    i. *Rule 15 (c)*

Even adopting Garrett's analytical framework for purposes of the relation back analysis, Counts IV, V, and VIII against Manis are time barred. Garrett asserts that "the policies of statutes of limitations have been effectively served" if the "new party [has] had adequate notice within the

limitations period" and "the new party [is not] prejudiced by the passage of time between the original pleading and the amended pleading." Pl.'s Resp. 15 (quoting *Goodman v. Praxair*, 494 F.3d 458, 468 (4th Cir. 2007)). Garrett's primary argument that Manis had notice of this case is that he – along with Franklin and Shy – "all work at the same VDOC facilities as the defendants named in the Original Complaint" and that Counsel for Manis was also Counsel for Davis. Pl.'s Resp. 14. These assertions miss the mark.

First and foremost, Manis *does not* currently work at the same VDOC facility as the defendants named in the Original Complaint. The two facilities named in the Original Complaint were Sussex I and Wallens Ridge, which are on opposite ends of the Commonwealth. When the Complaint was filed in December 2020, Manis worked at neither of those facilities. Moreover, no named Defendant in the Original Complaint was alleged to have worked at Wallens Ridge, the only exception being Davis, who, contrary to Garrett's assertions, did not actually work there at the relevant time at all. To adopt Garrett's position here would be to conclude that, because he named *somebody* (anybody, really) who worked for VDOC, then that's good enough and the Court should presume that Manis timely knew about this case. Such a conclusion is extreme and contrary to the law.

Second, Garrett maintains that because Counsel who represented the Defendants named in the Original Complaint now also represents Manis, that the Court should presume that Manis knew about this case all along. While such a presumption or inference may make some sense in the context of the *Goodman* case or a similar case in which the same counsel represents multiple large business entities, all of whom maintain some sort of parent or subsidiary relationship to each other but are in fact controlled by the same individual(s), it makes little sense in this case when the defendants are individual people who are dispersed throughout Virginia. To simply presume Manis

had timely notice of a case where he was not named as a defendant contrasts starkly with the actual facts before the Court and allows Garrett an unfair work around to shirk the pre-filing burden that ultimately falls upon him to determine what claims to bring against whom and in a timely manner.

Finally, Garrett's assertion that Manis had notice of this lawsuit within the limitations period "based on the numerous grievances Mr. Garrett submitted to Defendant Manis" is preposterous. Pl.'s Resp. 13. In support for this position, Garrett relies primarily on the non-binding (and hardly persuasive) district court's holding in *Skundor v. Coleman*, No. Civ. A. 5:02-0205, 2003 WL 22088342, at *9 (S.D. W. Va. July 31, 2003), which held that by responding to prison administrative complaints on a topic, a defendant was properly notified within the limitations period that he might be a defendant in a lawsuit on the same topic. This holding is plainly contrary to the direction from the Fourth Circuit in *Goodman*. *Goodman* bases the requisite notice *on the pending lawsuit*, not on a defendant's participation in the underlying facts. Indeed, *Goodman* states, "when a person would reasonably believe that the time for filing suit had expired, without having been given notice that it should have been named *in an existing action*" then that person is entitled to repose. *Goodman*, 494 F.3d at 472. *Goodman* goes on to state that "when a person is provided notice within the applicable limitations period that he would have been named *in the timely filed action* but for a mistake" then he is not entitled to repose. *Id*. Manis's "notice" cannot be premised on the mere fact that he was present at Wallens Ridge and responded to grievances *years* before this case was filed, despite what a trial court said in *Skundor* or *Wyatt v. Owens*, 317 F.R.D. 535, 541 (W.D. Va. 2016) (presuming notice because two of the five officers who "beat" the plaintiff "were well aware that the were among the five" who participated in the beating). *Wyatt* in particular is inapposite because it either presupposes that a "beating" occurred and that the two previously unnamed defendants participated in it or relies on facts elicited during

6

discovery that show the two individuals had participated in the incident. Either way, simply responding to prison grievances cannot possibly be sufficient to put a defendant prison official on notice that he is to be named in a yet-to-be-filed lawsuit that materializes more than two years later. Were that the case, no prison warden (or anyone who routinely responds to or reviews prison grievances) could ever mount a statute of limitations defense.[2] This would produce an absurd result and cannot be the conclusion in this case.

    ii.    Rule 15 (a)

Garrett filed his Second Amended Complaint on August 18, 2021, following this Court's Order granting him permission to do so. Manis was not a defendant in the case prior to August 18, 2021. This is because Counsel for Garrett did not even inquire into the correct identity of the Warden at Wallens Ridge until August 3, 2021, despite Garrett having been housed there for four months in 2019.

While "the speed with which a plaintiff moves to amend her complaint or files an amended complaint after obtaining leave to do so has no bearing on whether the amended complaint relates back", "a court may consider a movant's 'undue delay' or 'dilatory motive' in deciding whether to grant leave to amend under Rule 15(a)." *Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538, 5553 (2010). Additionally:

> [a] few cases tend to suggest that if a plaintiff's own inexcusable neglect was responsible for the failure to name the correct party, an amendment substituting the proper party will not be allowed, notwithstanding adequate notice to the new party. Although this factor is germane to the question of permitting an amendment, it is more closely related to the trial court's exercise of discretion under Rule 15(a) whether to allow the change than it is to the satisfaction of the notice requirements of Rule 15(c).

---

[2] Garrett's argument is akin to concluding that, because a driver involved in an accident was present at the accident and knew about it, then he had notice that he was going to be sued over it even if the plaintiff sues or serves him after the statute of limitations has run. This approach obliterates any defense relying on a statute of limitations and cannot be the determining factor for "adequate notice" of an "existing action" or "timely filed action" that does not yet exist.

6A Charles Alan Wright, *et al*. § 1498.

Here, this case was pending for more than eight months before Garrett ever identified Defendant Manis as a defendant. And he only did so after Counsel for Defendants informed him in July of 2021 that Davis did not even work at Wallens Ridge during the times Garrett alleged that he violated Garrett's constitutional rights. Notwithstanding any concept of "adequate notice" to Manis – and Manis does not concede that there was notice, adequate or otherwise – there is simply no excuse for Garrett to have waited nearly eight months following the filing of his Original Complaint to amend and name Manis well after the statute of limitations had run. If the warden at Wallens Ridge truly did violate Garrett's constitutional rights and rights under the ADAA for the four months he was incarcerated there, then his utter failure to even identify the proper person – a fact that can be easily ascertained via public records or via the warden's signature on Garrett's multiple grievances the warden allegedly responded to – can be due to no other reason than inexcusable neglect. Garrett and other plaintiffs cannot simply name any person as a defendant in order to narrowly satisfy the statute of limitations – as was the case here – and then be permitted to amend a complaint eight months later for no justifiable reason. Permitting this amendment and permitting claims to go forward against Manis effectively abolishes any idea that a statute of limitations is intended to offer any "repose" to a defendant after the statute has run. *See, e.g., Goodman*, 494 F.3d at 472.

### B. *Count V Fails to State a Claim*

Defendants have argued that Count V – an Eighth Amendment "failure to train" claim based on a purported failure to train employees regarding the proper provision of ADA accommodations – fails to state a claim. In summary, they assert that a supervisory liability claim that seeks to hold supervisors liable for the *unconstitutional* conduct of their subordinates by

definition requires that the subordinates actually engaged in conduct that violated the *Constitution*, not some other provision of federal law. Garrett's response asserts that "Garrett alleges in Count V that the Defendants violated his Eighth Amendment rights, not solely his rights under the ADA." Pl.'s Resp. 22. He also asserts that the supervisory defendants named in Count V "were deliberately indifferent" to a risk of harm to Garrett. Pl.'s Resp. 24. These assertions miss the point.

The purpose of bringing a claim based on supervisory liability is not to show that the supervisory defendants themselves violated a plaintiff's constitutional rights or were deliberately indifferent to a plaintiff's serious medical needs. If the facts supported such assertions, then direct liability claims against these individuals is the appropriate route to take, not a claim based on the theory of supervisory liability. Defendants and Garrett agree that, in the context of a supervisory liability claim such as the one asserted in Count V, Garrett must plead facts to show:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of *constitutional injury* to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices,"; and (3) that there was an "affirmative causal link" between the supervisor's inaction *and the particular constitutional injury suffered by the plaintiff*.

*Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (emphasis added) (additional citations omitted). Such liability is "ultimately . . . determined by pinpointing the persons in the decisionmaking chain whose deliberate indifference permitted the *constitutional abuses* to continue unchecked." *Id.* at 798 (emphasis added) (internal citations and quotations omitted).

The purpose of a supervisory liability claim – as opposed to a direct liability claim – is to hold supervisors responsible for their deliberate indifference which fails to prevent *unconstitutional* conduct by their subordinates or conduct that posses an unreasonable risk of *constitutional injury*, not to hold supervisors liable for individually violating the rights of a

9

plaintiff. If these supervisory defendants directly violated Garrett's rights – as he now asserts – then he should have filed a direct liability claim against them.

In actuality, Count V plainly seeks to hold the supervisory defendants liable not for the unconstitutional conduct of their subordinates, but for the conduct of their subordinates that purportedly violated the ADAAA. The case law outlined in Defendants' Memorandum plainly illustrates why this is not permissible and nothing in Garrett's Response contradicts Defendants' position. The Fourth Circuit has explicitly held that supervisory liability claims "require a predicate constitutional violation to proceed." *Evans v. Chalmers*, 703 F.3d 636, 654 (4th Cir. 2012). When plaintiff s fail to "state predicate § 1983 claims against the individual officers," the Fourth Circuit determined that "we must also hold that . . . plaintiffs have failed to state supervisory liability . . . claims." *Id*.

Garrett does not and cannot dispute the black letter law on this requirement. Instead, he attempts to convince the Court that he has stated sufficient facts to support a direct liability claim instead. The cases upon which Garrett relies – including *Scott v. Clarke*, 2012 WL 6151967 (W.D. Va. Dec. 11, 2012) and *Wright v. Collins*, 766 F.2d 841, 849-50 (4th Cir. 1985) – do not help him.

In *Scott*, the issue addressed in the above opinion on the defendants' motion to dismiss is not analogous to the claim made here. In *Scott*, the court held that the plaintiff had alleged sufficient facts to support a claim for Eighth Amendment deliberate indifference to serious medical needs against supervisory defendants who were allegedly aware of systemic constitutionally inadequate medical care at a women's prison. The question at issue here – e.g., whether Garrett can make out an Eighth Amendment supervisory liability claim based on subordinates' violations of the ADA – was not addressed in *Scott.* Instead, the *Scott* court determined that the plaintiffs had asserted sufficient facts to show that the supervisory defendants knew that subordinates were

engaged in conduct that exposed the plaintiffs to a "pervasive and unreasonable risk" of harm due to *constitutionally* inadequate medical care. Indeed, the ADA is never once mentioned in this *Scott* opinion. This case does not support Garrett's attempt here to hold supervisory defendants liable for conduct that violated the ADA.

Similarly, in *Wright*, the Fourth Circuit never once mentions the ADA or disability accommodations or even supervisory liability. Indeed, *Wright* actually reversed a trial court's decision awarding summary judgment to a warden because the Fourth Circuit found that there were disputes of fact regarding the warden's *personal involvement* in the allegedly *unconstitutional* prison conditions at issue. *Wright*, 766 F.2d at 850. Sure – Garrett's assertion that supervisors – like wardens – can be held liable under § 1983 if they know about *unconstitutional* practices and do nothing is legally accurate. But that is not what Garrett attempts to do in Count V. Here, he seeks to hold supervisory defendants liable for their subordinates' violation of the ADAAA. This is what is plainly not permissible. This Count should be dismissed against all Defendants.

C. **Count IX is Barred by VDOC's Sovereign Immunity**

  i. *Garrett has not Pled Facts to Show That the Conduct Allegedly Violating the ADAAA Also Violated the Constitution*

Garrett asserts that he "has pleaded companion constitutional violations" that will support his ADAAA claim for damages "because the underlying conduct *leading to* his ADA claims also violates the constitution." Pl.'s Resp. 25. But this is again a subtle change in what is actually required by the law and what Garrett is attempting to show the Court. It is not the "conduct leading to his ADA claims" that must be of a constitutional magnitude in order to trigger money damages in an ADA claim against VDOC. It is that the conduct that violates the ADA must also violate the constitution. Whether Garrett has successfully pled an excessive force claim that allegedly caused

his injuries "leading to" his ADAAA claim has no bearing on the success of his ADA claim for money damages.

As this Court has previously held, "in the context of state prisons, Title II [of the ADA] validly abrogates state sovereign immunity and 'creates a private cause of action for damages against the states' only 'for conduct that *actually* violates the Fourteenth Amendment.'" *Chase v. Baskerville*, 508 F. Supp. 2d 492, 506 (E.D. Va. 2007), *aff'd*, 305 F. App'x 135 (4th Cir. 2008) (quoting *Georgia*, 546 U.S. at 159 (emphasis in original)). To allow Garrett to throw in any old constitutional claim as a means of seeking money damages on his unrelated ADA claim belies common sense. It also makes a "congruence and proportionality" analysis impossible, as it attempts to compare claims and remedies based on the use of force with claims and remedies based on a denial of disability accommodations. Such a framework would allow an inmate to claim that prison staff failed to accommodate his disabilities in accessing educational programming and seek money damages for that conduct so long as he tacked on an Eighth Amendment excessive force claim in the same complaint. The Supreme Court has plainly stated that money damages are available in Title II ADA claims "for *conduct* that actually violates the Fourteenth Amendment" (*Georgia*, 546 U.S, at 159), not simply when a complaint contains an unrelated constitutional claim based on different *conduct* altogether. Another defendant's *conduct* concerning an encounter with a canine or the failure to provide adequate medical care is not the same *conduct* as a defendant's *conduct* at another facility concerning the disability accommodations at issue in Garrett's ADAAA claim.

> ii. *Garrett Cannot Both Plead Facts to Show That the Conduct Allegedly Violating the ADA Also Violated the Constitution When his Cause of Action is Made Possible by the ADAAA, not the ADA*

As Garrett made clear in his Response in Opposition to Defendants' Motion to Amend (Dkt. No. 43), his claims do not and cannot arise under the ADA. They were made possible by the ADAAA. Garrett wrote:

> As enacted in 1990, the ADA defines a qualifying "disability" as having "a physical or mental impairment that substantially limits one or more major life activities . . . ." 42 U.S.C. § 12102(1). Before Congress enacted the ADA Amendments Act ("ADAAA"), courts relied on a pair of Supreme Court cases that created "a demanding standard for qualifying as disabled": Toyota Motor Mfg., Ky., Inc. v. Williams, 534 U.S. 184, 197 (2002) and Sutton v. United Air Lines, Inc., 527 U.S. 471, 491–494 (1999). Applying this stringent standard, courts pre-amendment held that moderate restrictions on the ability to walk, such as Mr. Garrett's limping, did not suffice as a "qualifying disability" for purposes of the ADA. See, e.g., Talk v. Delta Airlines, Inc., 165 F.3d 1021, 1025 (5th Cir. 1999) (limping, "mov[ing] at a significantly slower pace than the average person," and difficulty walking do not constitute a substantial impairment); Penny v. United Parcel Serv., 128 F.3d 408, 415 (6th Cir.1997) ("moderate difficulty or pain experienced while walking does not rise to the level of a disability"); McCoy v. USF Dugan, Inc., 42 F. App'x 295, 297 (10th Cir. 2002) (same); Wood v. Crown Redi–Mix, Inc., 339 F.3d 682, 686 (8th Cir.2003) (holding plaintiff's ability to walk was not substantially limited where he could not walk longer than one quarter of one mile without resting); Kelly v. Drexel Univ., 94 F.3d 102, 105–08 (3d Cir.1996) (limping, slowly climbing stairs, and an inability to walk/jog for more than a mile are not examples of substantial limitations of the major life activity of walking because "comparatively moderate restrictions on the ability to walk are not disabilities"). *Under the original ADA standard, Mr. Garrett's claim would not have been cognizable because his disability does not "substantially limit one or more major life activities" to the extent then required.*

Pl.'s Original Resp. 29-30 (emphasis added).

Because the statute of limitations on claims made possible by the ADA is one year, and the statute of claims made possible by the ADAAA is four years (Pl.'s Orig. Resp. 29), Garrett cannot plead that his disability was so bad that it qualified as a disability under the ADA because if he did, his ADA claim would be time barred. Accordingly, he has specifically and repeatedly asserted that his "right foot neuropathy impacts his ability to walk or stand, causing him to move at slower

13

speeds and with great discomfort." Pl.'s Orig. Resp. 31. This disability – and the defendants' purported response to it – are plainly insufficient to show any person's *conduct* violated the Fourteenth Amendment. Again, Garrett attempts to shift attention away from the true focus of the inquiry, focusing instead on his alleged injuries rather than the defendants' *conduct* in order to claim that he has, in fact, asserted facts sufficient to sustain an Eighth Amendment claim. Garrett's allegations that he suffered pain, continued inability to walk, and deterioration of his well-being may go to damages for his excessive force claim. But they do not support what is missing from the SAC: Garrett has to show that VDOC employees excluded him from programs or services for which he was otherwise entitled; that they did so because he was disabled; and that *that conduct* (not Garrett's injuries but the conduct of the state actors) also violated the Fourteenth Amendment to the United States Constitution.[3] This he fails to do.

If Garrett were still incarcerated, then his remedy under either the ADA or the ADAAA would include injunctive relief in the form of court-ordered accommodations for his purported disability. This limitation to injunctive relief rather than money damages for these types of cases fits the "congruence and proportionality" requirement.[4] Awarding Garrett money damages because

---

[3] Additionally, any damages in an ADAAA or ADA claim must be related to the exclusion from the program, not extraneous physical symptoms which Garrett alleges received inadequate medical attention. The ADA is not "violated by a prison's simply failing to attend to the medical needs of its disabled prisoners." *Spencer v. Easter*, 109 Fed. App'x 571 (4th Cir. 2004). Here, Garrett attempts to mix his damages based on purportedly inadequate medical care with an alleged failure to accommodate his access to meals and medication in order to concoct a viable ADAAA claim.

[4] This Court in *Chase v. Baskerville*, 508 F. Supp. 2d at 506 outlined the difficulty with the "congruence and proportionality" requirement in this context when it wrote: "[s]ervices that had been offered purely as a matter of grace, such as telephones, computers, cable television, and books, [would] become vehicles for liability unless the States extend[ed] their generosity by furnishing disabled inmates interpreters or other aids for participating in these services" that they have no constitutional right to enjoy in the first place. *Chase*, 508 F. Supp. 2d at 506. Worse still, such a holding would create a perverse disincentive for prison systems to eliminate such beneficial but extraneous services altogether, for fear they would incur endless financial liability under Title II.

he missed a breakfast meal and "several" pill calls (exclusions from services which not even Garrett alleges actually caused him any harm) would skew any sort of proportionality between the violation of his rights under the ADAAA while in prison and the damages available to him. Garrett has been released and is no longer entitled to injunctive relief. The facts pled in support of his ADAAA claim are insufficient to overcome VDOC's sovereign immunity in this situation. Count IX should be dismissed.

## Conclusion

For the reasons outlined herein and in Defendants' Memorandum in Support of their Partial Motion to Dismiss, Defendants respectfully ask this Court to dismiss the claims against them.

Respectfully submitted,

MATTHEW FRANKLIN, CHRISTOPHER SHY, HAROLD W. CLARKE, A. DAVID ROBINSON, BARRY MARANO, WARDEN CARL MANIS, WARDEN ISRAEL HAMILTON, WILLIAM BARBETTO, and VDOC

By: /s/ Laura Maughan
Laura Maughan, VSB #87798
Assistant Attorney General
Office of the Attorney General
Criminal Justice & Public Safety Division
202 North 9th Street
Richmond, Virginia 23219
(804) 786-0030
(804) 786-4239 (Fax)
Email: lmaughan@oag.state.va.us

# CERFIFICATE OF SERVICE

I hereby certify that on the 17th day of November, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing ("NEF") to the following:

Andrew Talbot
Arnold & Porter Kaye Scholer LLP (DC)
601 Massachusetts Ave NW
Washington, DC 20001
202-942-5000
Fax: 202-942-5999
Email: andrew.talbot@arnoldporter.com

Ian S. Hoffman
Arnold & Porter Kaye Scholer LLP (DC)
601 Massachusetts Ave NW
Washington, DC 20001-3743
202-942-6406
Fax: 202-942-5999
Email: ian.hoffman@arnoldporter.com

John Freedman
Arnold & Porter Kaye Scholer LLP (DC)
601 Massachusetts Ave NW
Washington, DC 20001-3743
202-942-5000
Email: john.freedman@arnoldporter.com

Kelly Jo Popkin
Rights Behind Bars
416 Florida Avenue
Washington, DC 20001
202-455-4399
Email: kellyjo@rightsbehindbars.org

Lauren Sachi Wulfe
Arnold & Porter Kaye Scholer, LLP
777 S. Flower Street
44th Floor
Los Angeles, CA 90017-5844
213-243-4000
Email: Lauren.Wulfe@arnoldporter.com

Oren Nimni
Rights Behind Bars
416 Florida Avenue
Washington, DC 20001
202-455-4399
Email: oren@rightsbehindbars.org

Shira Anderson
Arnold & Porter Kaye Scholer LLP (DC)
601 Massachusetts Ave NW
Washington, DC 20001-3743
202-942-5000
Email: shira.anderson@arnoldporter.com

*Counsel for Plaintiff*


   /s/ Laura Maughan
   Laura Maughan, VSB #87798
   Assistant Attorney General