# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

CURTIS J. GARRETT,

          Plaintiff,

    v.

COMMONWEALTH OF VIRGINIA, *et al*.,        CASE NO. 3:20-cv-986

          Defendants.

## PLAINTIFF'S BRIEF IN OPPOSITION TO
## DEFENDANT TEVIN GAYLES' MOTION FOR SUMMARY JUDGMENT

Defendant Tevin Gayles ("Defendant" or "Defendant Gayles") has filed a motion for summary judgment on Claim III of the Third Amended Complaint ("TAC") pursuant to Rule 56 arguing the claim is barred by the statute of limitations and he did not receive notice of this action and seeks dismissal from this case. Defendant's argument misconstrues the notice standard applied in relation-back analyses and obscures material facts that militate against his conclusion that Claim III against him is time-barred. Therefore, as more fully set forth herein, Defendant Gayles' motion should be denied because there is "sufficient evidence favoring [Mr. Garrett] for a jury to return a verdict" that Count III in the TAC relates back to the timely Original Complaint.[1] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

---

[1] As used herein, "Original Complaint" refers to the Complaint filed by Mr. Garrett on December 23, 2020. (ECF No. 1.)

**RESPONSE TO DEFEDNANT'S STATEMENT OF MATERIAL FACTS[2]**

1.  Paragraph 6.  Not a material fact.

2.  Paragraph 7.  Not a material fact.

3.  Paragraph 8.  Not a material fact.

4.  Paragraph 9.  Not a material fact.

5.  Paragraph 10.  Not a material fact.

6.  Paragraph 11.  Not a material fact.

7.  Paragraph 14.  Undisputed, but misleading and not relevant.  On December 25, 2018,
    Defendant Gayles was employed as a Canine Sergeant at Sussex I State Prison.  *See* Ex.
    1,[3] JOHNSON 582_002201 (VDOC Canine Operations Organization Chart dated April
    28, 2019).[4]  And regardless of whether Defendant Gayles was physically present at
    Sussex I on December 25, 2018, on December 26, 2018, Defendant Gayles received two
    separate emails containing Defendants Franklin's and Shy's respective Canine Bite Log
    Reports, Utilization Reports, and Internal Incident Reports regarding the canine attack
    against Mr. Garrett on December 25, 2018.  *See* Ex. 2, JOHNSON 582_008461 (email
    from David Fida to Defendant Gayles and others attaching Defendants Shy's Canine Bite
    Log Reports, Utilization Reports, and Internal Incident Reports on the December 25,
    2018 canine attack against Mr. Garrett); Ex. 3, JOHNSON 582_007958 (email from

---

[2] Defendant Gayle's statement of facts is supported only by an unsigned declaration.  As of the date of this filing, Defendant Gayles has not submitted an executed declaration as required by Fed. R. Civ. P. 56(c)(4).

[3] "Ex." refers to exhibits to the Declaration of Sophia Gonzalez in Support of Plaintiff's brief in Opposition to Defendant Tevin Gayles' Motion for Summary Judgment, filed on July 29, 2022.

[4] To facilitate production and review of documents in VDOC's possession, Counsel for Plaintiff agreed with Counsel for Defendants that certain documents relating to Canine program policies produced by VDOC in response to a subpoena in *Johnson v. McCowan*, No. 7:20-cv-00582 (W.D. Va.), could be used in this matter to avoid re-producing those documents.

David Fida to Defendant Gayles and others attaching Defendants Franklin's Canine Bite Log Reports, Utilization Reports, and Internal Incident Reports on the December 25, 2018 canine attack against Mr. Garrett).

8. Paragraph 15.  Undisputed, but misleading and not relevant.  Defendant Gayles was aware of the underlying canine attack against Mr. Garrett which forms the basis of this lawsuit, having received the Canine Bite Log Reports, Utilization Reports, and Internal Incident Reports describing the attack on December 26, 2018.  *See* Ex. 2, JOHNSON 582_008461 (email attaching Defendant Shy's Canine Bite Log Reports, Utilization Reports, and Internal Incident Reports); Ex. 3, JOHNSON 582_007958 (email attaching Defendants Franklin's Canine Bite Log Reports, Utilization Reports, and Internal Incident Reports).  And as detailed below, Defendant Gayles should have been made aware of the underlying canine attack and the potential for litigation in light of Plaintiffs' grievances about the incident, the commencement of an investigation by the Commonwealth Attorneys' office, and the commencement of an investigation by VDOC's Special Investigations Unit.  *See* Ex. 9, Garrett 3:20cv986_0522 (Garrett's Regular Grievance and Informal Complaint); Ex. 10, Garrett 3:20cv986_0396 (SIU Investigative Report and Connors Final Report).

9. Paragraph 16.  Undisputed, but misleading and not relevant.  Defendant Gayles' declaration does not indicate that he had no conversations with anyone at Sussex I State Prison regarding the underlying canine attack against Mr. Garrett which forms the basis of this lawsuit, and Gayles received the Canine Bite Log Reports, Utilization Reports, and Internal Incident Reports, which provided him notice of the attack.  *See* Ex. 2, JOHNSON 582_008461 (email attaching Defendant Shy's Canine Bite Log Reports,

Utilization Reports, and Internal Incident Reports); Ex. 3, JOHNSON 582_007958 (email attaching Defendants Franklin's Canine Bite Log Reports, Utilization Reports, and Internal Incident Reports).

10. Paragraph 17.  Undisputed, but misleading and not relevant.  Gayles' declaration does not indicate that he had no conversations with anyone at Sussex I State Prison regarding the canine attack against Mr. Garrett which forms the basis of this lawsuit, and Gayles received the Canine Bite Log Reports, Utilization Reports, and Internal Incident Reports, which provided him notice of the attack.  *See* Ex. 2, JOHNSON 582_008461 (email attaching Defendant Shy's Canine Bite Log Reports, Utilization Reports, and Internal Incident Reports); Ex. 3, JOHNSON 582_007958 (email attaching Defendants Franklin's Canine Bite Log Reports, Utilization Reports, and Internal Incident Reports).

11. Paragraph 18.  Not a material fact.

12. Paragraph 19.  Disputed.  During his time as Canine Sergeant at Sussex I State Prison, Defendant Gayles was responsible for "provid[ing] support to the institutional patrol Canine Officers" and "supervis[ing] the patrol canine program."  *See* Ex. 4, Garrett 3:20cv986_0808 (VDOC Operating Procedure 435.3) at 2, 9.  Defendant Gayles also wrote and reviewed a performance plan and a performance evaluation for Defendant Matthew Franklin in November 2019.  *See* Ex. 5, Garrett_3:20cv986_1229–33 (containing Defendant Franklin's work description/performance plan from November 2019, for which Defendant Gayles wrote, reviewed, and signed off on Parts I through IV); Ex. 6, Garrett_3:20cv986_1249–52 (containing Defendant Franklin's performance evaluation, which Defendant Gayles reviewed and signed in the available space next to "Supervisor's Comments").

4

**ADDITIONAL FACTS AS TO WHICH THERE IS A GENUINE DISPUTE**

1.  On December 25, 2018, the day of the canine attack against Mr. Garrett, Defendant Gayles was employed as the only Canine Sergeant at Sussex I State Prison. *See* Ex. 1, JOHNSON 582_002201 (VDOC Canine Operations Organization Chart dated April 28, 2019).

2.  Pursuant to the Virginia Department of Corrections ("VDOC") Operating Procedures in effect at the time of the canine attack against Plaintiff Curtis J. Garrett, Defendant Gayles, while employed as a Canine Sergeant at Sussex I State Prison, was in charge of supervising the patrol canine program at any VDOC facilities with Patrol Canine Teams. *See* Ex. 4, Garrett 3:20cv986_0808 (VDOC Operating Procedure 435.3) at 9.

3.  Pursuant to the VDOC Operating Procedures in effect at the time of the canine attack against Mr. Garrett, Defendant Gayles, while employed as a Canine Sergeant at Sussex I State Prison, was required to be immediately notified whenever a person is bitten by a VDOC canine. *See* Ex. 4, Garrett 3:20cv986_0808 (VDOC Operating Procedure 435.3) at 21.

4.  On December 25, 2018, during which time Defendant Gayles was employed as a Canine Sergeant at Sussex I State Prison, Mr. Garrett was alone in his cell when Defendant Matthew Franklin and Christopher Shy opened the door and entered the cell with their canines, Hurricane and Lozjo respectively, and ordered the canines to attack Mr. Garrett. *See* Ex. 7, Garrett 3:20cv986_0390 (Franklin Internal Incident Report); Ex. 8, Garrett 3:20cv986_0391 (Shy Internal Incident Report).

5.  Also on December 25, 2018, Defendants Franklin and Shy completed Canine Bite Log Reports, Utilization Reports, and Internal Incident Reports regarding the canine attack against Mr. Garrett that took place that day. *See* Ex. 2, JOHNSON 582_008461 (email

attaching Defendant Shy's Canine Bite Log Reports, Utilization Reports, and Internal Incident Reports); Ex. 3, JOHNSON 582_007958 (email attaching Defendants Franklin's Canine Bite Log Reports, Utilization Reports, and Internal Incident Reports).

6. On December 26, 2018, during which time Defendant Gayles was employed as a Canine Sergeant at Sussex I State Prison, Defendant Gayles received two separate emails containing Defendants Franklin's and Shy's respective Canine Bite Log Reports, Utilization Reports, and Internal Incident Reports regarding the canine attack against Mr. Garrett on December 25, 2018.  *See* Ex. 2, JOHNSON 582_008461 (email attaching Defendant Shy's Canine Bite Log Reports, Utilization Reports, and Internal Incident Reports from the canine attack against Mr. Garrett on December 25, 2018); Ex. 3, JOHNSON 582_007958 (email attaching Defendants Franklin's Canine Bite Log Reports, Utilization Reports, and Internal Incident Reports from the canine attack against Mr. Garrett on December 25, 2018).

7. On January 7, 2019, during which time Defendant Gayles was employed as a Canine Sergeant at Sussex I State Prison, Mr. Garrett filed an informal complaint with the VDOC regarding the canine attack against him on December 25, 2018.  *See* Ex. 9, Garrett 3:20cv986_0522 (Garrett's Regular Grievance and Informal Complaint).  Defendant Gayles' declaration does not say he was unaware of Mr. Garrett's informal complaint.

8. In January, 2019, during which time Defendant Gayles was employed as a Canine Sergeant at Sussex I State Prison, the VDOC Special Investigations Unit ("SIU") launched its investigation into the canine attack against Mr. Garrett on December 25, 2018, which was led by Special Agent K. Connors.  *See* Ex. 10, Garrett 3:20cv986_0396 (SIU Investigative Report and Connors Final Report).  Defendant Gayles' declaration

6

does not say he was unaware of the SIU investigation or that he did not receive a hold notice as part of this investigation.

9. On January 24, 2019, during which time Defendant Gayles was employed as a Canine Sergeant at Sussex I State Prison, Mr. Garrett submitted a regular grievance with VDOC regarding the canine attack against him on December 25, 2018. *See* Ex. 9, Garrett 3:20cv986_0522 (Garrett's Regular Grievance and Informal Complaint). Defendant Gayles' declaration does not say he was unaware of Mr. Garrett's regular grievance.

10. On February 4, 2019, during which time Defendant Gayles was employed as a Canine Sergeant at Sussex I State Prison, Mr. Garrett's aunt, Lynn Carr-Hawkes, sent the first of several email communications to VDOC leadership, including Harold Clarke, Warden Israel Hamilton, and A. David Robinson, regarding Mr. Garrett's transfer to Wallens Ridge State Prison, Mr. Garrett's lack of medical treatment for the injuries he sustained in the canine attack against him on December 25, 2018, and the ongoing SIU investigation into the attack. *See* Ex. 11, JOHNSON 582_009881 (email from Lynn Carr-Hawkes to VDOC leadership regarding Mr. Garrett's injuries and the canine attack). Defendant Gayles' declaration does not say he was unaware of these communications.

11. On February 13, 2019, during which time Defendant Gayles was employed as a Canine Sergeant at Sussex I State Prison, Special Agent K. Connors issued her Final Report as part of the SIU investigation into the canine attack against Mr. Garrett on December 25, 2018. *See* Ex. 10, Garrett 3:20cv986_0396 (SIU Investigative Report and Connors Final Report). Defendant Gayles' declaration does not say he was unaware of the SIU investigation.

12. On April 29, 2019, during which time Defendant Gayles was employed as a Canine Sergeant at Sussex I State Prison, the SIU referred the investigative file regarding the canine attack against Mr. Garrett on December 25, 2018, to the Sussex County Commonwealth's Attorney's Office for review. *See* Ex. 12, Garrett 3:20cv986_0502 (SIU Letter to VDOC Chief of Investigations, Paul W. Haymes). Defendant Gayles' declaration does not say he was unaware of the Sussex County Commonwealth's Attorney's Office's investigation into the canine attack against Mr. Garrett on December 25, 2018, or that he did not receive a hold notice as part of this investigation.

13. On November 12, 2019, during which time Defendant Gayles was employed as a Canine Sergeant at Sussex I State Prison, Defendant Gayles wrote, reviewed, and signed off on Parts I through IV of Defendant Franklin's work description/performance plan. *See* Ex. 5, Garrett_3:20cv986_1229–33 (containing Defendant Franklin's work description/performance plan from November 2019, for which Defendant Gayles wrote, reviewed, and signed off on Parts I through IV).

14. On November 12, 2019, during which time Defendant Gayles was employed as a Canine Sergeant at Sussex I State Prison, Defendant Gayles reviewed and provided his signature in the available space next to "Supervisor's Comments" on Defendant Franklin's performance evaluation. *See* Ex. 6, Garrett_3:20cv986_1249–52 (containing Defendant Franklin's performance evaluation, which Defendant Gayles reviewed and signed in the available space next to "Supervisor's Comments").

## LEGAL STANDARD

Summary judgment is only appropriate when a court viewing the record as a whole and in the light most favorable to the nonmoving party determines that there exists "no genuine issue

as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986). A fact is material if its existence or non-existence could lead a jury to different resolutions of the case. *George v. Michalek*, 2020 WL 7497800, at *1 (E.D. Va. Dec. 21, 2020). Such facts must be presented in the form of exhibits and affidavits. *Celotex Corp.*, 477 U.S. at 324. When considering a motion for summary judgment, it is not the province of the court to "weigh the evidence and determine the truth of the matter." *Anderson*, 477 U.S. at 249. Instead, the court must draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986). Further, "the nonmoving party is entitled to have the credibility of his evidence as forecast assumed." *Miller v. Leathers*, 913 F.2d 1085, 1087 (4th Cir. 1990) (en banc) (internal quotations omitted). Summary judgment must therefore be denied where, as here, there is "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249.

## ARGUMENT

It is undisputed that Count III was timely when Mr. Garrett filed his Original Complaint. *See* Mot.[5] at 7. Mr. Garrett brought this same claim in his TAC, but in that amended complaint, he substituted Defendant Gayles for originally named John Doe 2. Defendant Gayles' motion for summary judgment, then, rests on the argument that no reasonable jury could determine, based on the evidence at hand, that Mr. Garrett's claims against him relate back to the Original Complaint. *See* Mot. at 6. As demonstrated below, this argument is without merit.

---

[5] As used herein, "Mot." refers to the Memorandum in Support of Defendant Gayles' Motion for Summary Judgment as filed on July 15, 2022. (ECF No. 125.)

Under Federal Rule of Civil Procedure 15(c), an amended complaint that changes the party against whom a claim is asserted "relates back" to the date of the original pleading if: "(1) the claim in the amended complaint arose out of the same transaction that formed the basis of the claim in the original complaint; (2) the party to be brought in by the amendment received notice of the action such that it will not be prejudiced in maintaining a defense to the claim; and (3) it should have known that it would have originally been named a defendant but for a mistake concerning the identity of the proper party." *Goodman v. PraxAir*, 494 F.3d 458, 467 (4th Cir. 2007) (internal quotation marks omitted).[6]

Element one of the relation-back analysis is therefore not at issue as Defendant concedes that Count III of the TAC asserts a claim that "arises out of the same conduct, transaction, or occurrence as the original pleading." Mot. at 8.

As to the remaining elements, a reasonable jury could conclude that Defendant Gayles had notice of this action because he received, as was required, multiple Canine Bite Log Reports, Utilization Reports, and Internal Incident Reports describing the attack by Defendants Franklin and Shy and their patrol canines against Mr. Garrett and including photos of Mr. Garrett's injuries. *See* Ex. 2, JOHNSON 582_008461 (email from David Fida to Defendant Gayles and others attaching Defendants Shy's Canine Bite Log Reports, Utilization Reports, and Internal Incident Reports on the December 25, 2018 canine attack against Mr. Garrett); Ex. 3, JOHNSON

---

[6] Defendant chiefly relies on *McGraw v. Gore*, 31 F.4th 844 (4th Cir. 2022), to frame his relation-back analysis. Mot. at 8. Plaintiff does not dispute the appropriateness of the legal standards articulated in *McGraw*; to the contrary, as Defendant Gayles concedes, *McGraw* simply "reiterate[s] and summarize[s] the relevant standards that apply" in the Fourth Circuit. *Id.* However, *McGraw* is irrelevant beyond the legal rules it affirms. In *McGraw*, the court contemplated the circumstances that might warrant a "good cause" extension to the Rule 4(m) notice period. 31 F.4th at 849–52. Here, Defendant Gayles was on notice before the Rule 4(m) period lapsed. *See infra* Sections I-II. Therefore, reliance on *McGraw* for anything other than the legal standard is inapposite.

582_007958 (email from David Fida to Defendant Gayles and others attaching Defendants Franklin's Canine Bite Log Reports, Utilization Reports, and Internal Incident Reports on the December 25, 2018 canine attack against Mr. Garrett). Further, Defendant Gayles should have known that he would have been named in the Original Complaint but for a mistake concerning his identity because he had supervisory and disciplinary authority over Franklin and Shy and should have been immediately notified about the attack pursuant to Operating Procedure 435.3. *See* Ex. 4, Garrett 3:20cv986_0808 (VDOC Operating Procedure 435.3) at 2, 9 (canine sergeant responsible for "provid[ing] support to the institutional patrol Canine Officers" and "supervis[ing] the patrol canine program"); *id.* at 21 ("In all cases where a person is bitten by a DOC canine, the Canine Officer or other responsible . . . must immediately notify the Statewide Canine Coordinator and Institutional Canine Sergeant of the incident."). And Defendant Gayles should have been aware of Mr. Garrett's grievances, the SIU and Commonwealth's Attorney's Office's investigations into the attack, and the complaints communicated to VDOC leadership by Mr. Garrett's family regarding the canine attack—all of which were ongoing during Defendant Gayles' employment as Canine Sergeant of Sussex I State Prison—that strongly indicated that there would likely be a lawsuit based on this unconstitutional incident. *See* Ex. 9, Garrett 3:20cv986_0522 (Garrett's Regular Grievance and Informal Complaint); Ex. 10, Garrett 3:20cv986_0396 (SIU Investigative Report and Connors Final Report); Ex. 11, JOHNSON 582_009881 (email from Lynn Carr-Hawkes to VDOC leadership regarding Mr. Garrett's injuries and the canine attack); Ex. 12, Garrett 3:20cv986_0502 (SIU Letter to VDOC Chief of Investigations, Paul W. Haymes). Accordingly, summary judgment for Defendant Gayles is inappropriate because a fair-minded jury presented with the facts at hand could reasonably

11

conclude that Mr. Garrett's claim against Defendant Gayles relates back to the timely filed Original Complaint.

**I. BASED ON THE EVIDENCE PRESENTED A REASONABLE JURY COULD CONCLUDE THAT DEFENDANT GAYLES RECEIVED ADEQUATE NOTICE OF THIS ACTION**

The second element of Rule 15(c) requires that "within the period provided by Rule 4(m)"—*i.e.*, 90 days from the filing of the Original Complaint—Defendant Gayles "received such notice of the action that [he] will not be prejudiced in defending on the merits." Fed. R. Civ. P. 15(c)(1)(C). "[T]he form of notice under Rule 15(c) may be either formal or informal; the relation-back doctrine does not require a showing that the actual complaint or summons was served upon the party affected by the amendment." *Bruno v. Paulison*, No. RDB 08–0494, 2009 WL 377300, at *4 (D. Md. Feb. 12, 2009); *see also W. Contracting Corp. v. Bechtel Corp.*, 885 F.2d 1196, 1201 (4th Cir. 1989). In the instant matter, there would be a reasonable basis for a jury to find that Defendant Gayles timely received notice of Mr. Garrett's lawsuit because he received adequate notice of the attack against Mr. Garrett; he had the ability to identify himself as John Doe 2 in the original complaint; he had presumed notice of the attack; and he has not been prejudiced by his substitution in the TAC.

**A. Defendant Gayles Received Notification And Documentation Describing The Attack Against Mr. Garrett**

A reasonable jury could conclude that Defendant Gayles had adequate notice of Mr. Garrett's constitutional injuries arising from the canine attack. VDOC Operating Procedure 435.3 requires canine sergeants to be notified immediately when a canine is deployed on an inmate. *See* Ex. 4, Garrett 3:20cv986_0808 (VDOC Operating Procedure 435.3) at 21. It is undisputed that Gayles was a Canine Sergeant on the day of the attack, *see* Gayles Decl. ¶¶ 3–5; therefore, it is irrelevant whether Defendant Gayles was present at Sussex I on December 25,

12

2018 because he was required to receive immediate notification of the attack under VDOC

Operating Procedures.

Moreover, the record confirms that Defendant Gayles received written notice of the

attack the day after it occurred through emails containing Defendants Franklin's and Shy's

Canine Bite Log Reports, Utilization Reports, and Internal Incident Reports.  *See* Ex. 2,

JOHNSON 582_008461 (email from David Fida to Defendant Gayles and others attaching

Defendants Shy's Canine Bite Log Reports, Utilization Reports, and Internal Incident Reports on

the December 25, 2018 canine attack against Mr. Garrett); Ex. 3, JOHNSON 582_007958 (email

from David Fida to Defendant Gayles and others attaching Defendants Franklin's Canine Bite

Log Reports, Utilization Reports, and Internal Incident Reports on the December 25, 2018 canine

attack against Mr. Garrett).   These reports, which contain Franklin's and Shy's descriptions of

the attack,[7] alerted Defendant Gayles to the egregious, unconstitutional conduct that forms the

basis of this lawsuit—namely that Defendants Franklin and Shy unjustifiably deployed two

canines to engage Mr. Garrett and extract him from a closed cell, despite the fact that he did not

pose a threat to the officers.  *See, e.g.*, Ex. 7, Garrett 3:20cv986_0390 (Franklin Internal Incident

Report) (noting that Defendant Franklin "followed offender C. Garrett with [his] assigned canine

---

[7] As a general matter, canine officers fill out Canine Bite Log Reports whenever a canine engages an offender and includes information on the canine bite, when and where the canine engagement occurred, and who was involved (i.e. the canine officers, canines, and offenders whom the canines engaged).  *See, e.g.*, Ex. 13, Garrett 3:20cv986_0978 (Shy Canine Bite Log Report).  Utilization reports are completed whenever a canine officer uses or deploys their canine, describing the utilization and when and where it occurred, as well as identifying the officers, offenders, and canines involved and the witnesses to the utilization.  *See, e.g.*, Ex. 14, Garrett 3:20cv986_0981 (Shy Utilization Report).  Internal incident reports are used to memorialize incidents among officers and/or offenders that occur at VDOC facilities, identifying the type of incident (in this case a "Canine present - force used/engaged") when and where the incident occurred, and which officers and offenders were involved, as well as describing what occurred.  *See, e.g.*, Ex. 8, Garrett 3:20cv986_0391 (Shy Internal Incident Report).

13

Hurricane" into Mr. Garrett's cell, during which time Franklin gave Hurricane a "verbal command to engage offender C. Garrett"); Ex. 8, Garrett 3:20cv986_0391 (Shy Internal Incident Report) (noting that, at the same time that Defendant Shy's canine "Lozjo engaged offender Garrett's upper left arm," Defendant Franklin's canine "Hurricane reengaged offender C. Garrett on his left lower leg" while Mr. Garrett was inside his cell).  The information in these reports was more than sufficient to provide Defendant Gayles notice of Mr. Garrett's Eighth Amendment claims.  *See, e.g., Skundor v. Coleman*, No. Civ.A. 5:02–0205, 2003 WL 22088342, at *9 (S.D. W. Va. July 31, 2003) (holding that claims against the defendant related back because the defendant "had notice of Plaintiff's administrative grievances and therefore knew that the circumstances which were the subject of Plaintiff's grievances might be the basis for a lawsuit and that he might be a party to it"), *aff'd,* 98 F. App'x 257 (4th Cir. 2004); *Headrick v. Wise*, No. 3:16-cv-01328-GCS, 2021 WL 462203, at *5 (S.D. Ill. Feb. 9, 2021) (holding that the defendant "had notice that he could be named as a defendant in this case" even though the original complaint named a Doe defendant because "he filed an incident report regarding the events at issue").[8]

---

[8] *See also, e.g.*, *Cooper v. Hill*, No. 12-CV-1227S, 2018 WL 5905488, at *6 (W.D.N.Y. Nov. 12, 2018) (finding Rule 15's notice requirement was satisfied because the newly named defendant "knew, or should have known, of the probability of litigation given the grievance . . . filed about the incident in question"); *McKennon v. George*, No. 1:12–0095, 2014 WL 794366, at *3 (M.D. Tenn. Feb. 26, 2014) (finding that the newly named defendants had constructive notice of the original complaint in part because the plaintiffs' grievances were referred to them); *Brittingham v. Camden City Police*, No. CIV. 05-115, 2008 WL 108887, at *3 (D.N.J. Jan. 9, 2008) (finding that defendant-prison officers had "timely notice that they were intended defendants" because "[p]rior to filing his lawsuit, [the plaintiff] lodged an internal affairs complaint with the [police department], based on precisely the allegations that … form[ed] the basis of his claims").

### B. Defendant Gayles Had The Means And Ability To Identify Himself As John Doe 2 In The Original Complaint

A reasonable jury could determine that Defendant Gayles had the ability to recognize John Doe 2 was meant to identify him based on the Original Complaint's clear description of his title and responsibilities. Original Complaint ¶¶ 15, 94–96, 98–102, 159–60, 166–67. In particular, the Original Complaint specified that Mr. Garrett's claims targeted the "Institutional Canine Sergeant at Sussex I Prison" who failed to investigate, supervise, train, or discipline the canine patrol officers responsible for Mr. Garrett's canine attack and "who served in that capacity on December 25, 2018." *Id.* ¶ 15. The Original Complaint also listed the Institutional Canine Sergeant's responsibilities as "provid[ing] support to and oversee[ing] the canine officers at Sussex I, including the Patrol Canine Team" as well as "ensuring that the Canine Unit at Sussex I complies with all policies applicable to the use of force and canines." *Id.* And the Original Complaint included the fact that the Institutional Canine Sergeant "receives all Canine Bite Reports for any incidents in Sussex I that result in a canine bite and must be notified immediately of the incident under VDOC Operating Procedures." *Id.*

It is undisputed that Gayles served as a Canine Sergeant at Sussex I at the time that the canine attack against Mr. Garrett on December 25, 2018, occurred. *See* Ex. 1, JOHNSON 582_002201 (VDOC Canine Operations Organization Chart dated April 28, 2019); Gayles Decl. ¶¶ 3–5. Further, the Original Complaint listed Gayles' responsibilities as Canine Sergeant, including those related to him receiving immediate notification of any incidents involving canine bites. *See* Ex. 4, Garrett 3:20cv986_0808 (VDOC Operating Procedure 435.3) at 2, 9 (describing the responsibilities of an Institutional Canine Sergeant as "provid[ing] support to the institutional patrol Canine Officers" and "supervis[ing] the patrol canine program."); *id.* at 21 ("In all cases where a person is bitten by a DOC canine, the Canine Officer or other responsible . . . must

immediately notify the Statewide Canine Coordinator and Institutional Canine Sergeant of the incident."). Courts interpreting similar facts have found that the defendant at issue had timely notice of the lawsuit. *See, e.g.*, *McDaniel v. Maryland*, No. RDB–10–00189, 2010 WL 3260007, at \*5 (D. Md. Aug. 18, 2010) (holding that a named defendant substituted for a John Doe defendant had timely notice of the lawsuit in part because the defendants "had the means and ability to identify the John Doe officer, especially since his role [was] described in the Complaint and he [was] allegedly depicted in the audiovisual recording of the events"); *Williams v. W. Va. Div. of Corr.*, No. 2:19-cv-00496, 2020 WL 748873, at \*2–4 (S.D.W. Va. Feb. 13, 2020) (holding that defendants "would be able to identify and inform" individuals named as Doe Defendants about the plaintiff's claims based on the complaint's description of their positions and alleged misconduct); *see also Goodman*, 494 F.3d at 473 (finding that the defendant "knew, better than anyone, which corporate entity" the plaintiff intended to sue, given that "the complaint made conceptually clear that it was suing the corporate entity that was the successor of Tracer Research Corporation" and that the defendant had "acquired Tracer Research and participated in the structuring of the transaction"). This Court should find similarly that Defendant Gayles had timely notice of the Original Complaint in the present case based on his means and ability to recognize John Doe 2 as himself.

## C. Defendant Gayles Had Constructive Notice Of The Original Complaint

Further, a reasonable jury could find that Defendant Gayles had "presumed" or "constructive" notice because he has a sufficient identity of interest with the original defendants. "Notice may be presumed when the nature of the claim is apparent in the initial pleading and the added defendant has . . . a sufficient identity of interest with the original defendant." *Goodman*, 494 F.3d at 474. Defendants share a sufficient "identity of interest" when they "work[ed]

16

Case 3:20-cv-00986-JAG   Document 133   Filed 07/29/22   Page 17 of 27 PageID# 1354

alongside the . . . original defendants," *Wyatt v. Owens*, 317 F.R.D. 535, 540 (W.D. Va. 2016), or "when the new defendant is represented by the same attorney as the original defendants," *Waters v. The Geo Grp., Inc.*, No. 2:15cv282, 2016 WL 4373717, at \*7 (E.D. Va. Aug. 10, 2016) (holding that constructive notice could be imputed to the new defendants because the new defendants, "upon their addition to the case, will likely be represented by the same attorney defending the current named Defendants").  Here, reasonable jurors could find both circumstances present.

Defendant Gayles shared a unity of interest with the other defendants, including Defendants Shy and Franklin, sufficient to provide constructive notice of Mr. Garrett's claims. Defendant Gayles continued to work at the same VDOC facility as other Defendants named in the Original Complaint for nearly a year after Mr. Garrett's attack.  Gayles Decl. ¶¶ 3–5.  During this time, there were multiple grievances, an investigation, and several complaints submitted about and to these other Defendants in connection with the attack.

For example, while Defendant Gayles was still at Sussex I, Mr. Garrett filed his Informal Complaint and Regular Grievance regarding the attack and the conduct of Officers Franklin and Shy, both of whom Gayles supervised at the time.  *See* Ex. 9, Garrett 3:20cv986_0522 (Garrett's Regular Grievance and Informal Complaint).  Defendant Hamilton then requested the SIU investigation into the incident.  *See* Ex. 10, Garrett 3:20cv986_0396 (SIU Investigative Report and Connors Final Report).  And while Defendant Gayles was Canine Sergeant at Sussex I State Prison, Mr. Garrett's aunt, Lynn Carr-Hawkes sent various emails to VDOC leadership, demanding that Mr. Garrett be placed in a medical treatment facility so that he could receive proper treatment for his physical and mental injuries following the canine attack; that Mr. Garrett's medical records be released to his mother, Myra Garrett; and that Mr. Garrett's family

17

be given access to the video footage of the attack. *See* Ex. 11, JOHNSON 582_009881 (email from Lynn Carr-Hawkes to VDOC leadership regarding Mr. Garrett's injuries and the canine attack). Given Defendant Gayles' role as Canine Sergeant, Defendant Gayles would have been aware of the serious accusations of canine officer misconduct found in these complaints, investigations, and all of which were directed to known Defendants. As a result, the aforementioned complaints, investigations, and communications provided sufficient constructive notice to Defendant Gayles regarding Mr. Garrett's attack and the likelihood that Mr. Garrett would file a lawsuit.

Nevertheless, Defendant Gayles argues that he did not have notice because he claims he has not spoken to Christopher Shy, Matthew Franklin, or William Barbetto since "leaving his employment at SISP," Gayles Decl. ¶ 6. Regardless of whether this fact is true (and as indicated below, Plaintiff has not had the opportunity to challenge this fact in a deposition) there is nothing in the record—or notably, his declaration—to suggest that Defendant Gayles did not have conversations with these Defendants about the attack, the grievances, the SIU investigation, or Mr. Garrett's family's complaints in the months prior to his departure from VDOC. To the contrary, under VDOC's Operating Procedures, Defendant Gayles was *required* to have at least some communication with Defendants Franklin and Shy regarding the attack. *See* Ex. 4, Garrett 3:20cv986_0808 (VDOC Operating Procedure 435.3) at 21. Further, as Canine Sergeant at Sussex I, Defendant Gayles had supervisory and disciplinary authority over Franklin and Shy, and even wrote and reviewed a performance plan and a performance evaluation for Officer Franklin in November 2019. *See* Ex. 5, Garrett_3:20cv986_1229–33 (containing Defendant Franklin's work description/performance plan from November 2019, for which Defendant Gayles wrote, reviewed, and signed off on Parts I through IV); Ex. 6, Garrett_3:20cv986_1249–

18

52 (containing Defendant Franklin's performance evaluation, which Defendant Gayles reviewed and signed in the available space next to "Supervisor's Comments").

It is worth noting that Defendant Gayles is silent as to whether he spoke to Warden Israel Hamilton, regarding the canine attack against Mr. Garrett, either before or after his departure from VDOC. This omission is especially glaring given that it was Warden Hamilton who requested the SIU investigation. *See* Ex. 10, Garrett 3:20cv986_0396 (SIU Investigative Report and Connors Final Report). Given these facts, to suggest that Defendant Gayles had no knowledge that Mr. Garrett made accusations of serious misconduct by canine officers that Gayles supervised begs incredulity.

In addition, Counsel for Defendant Gayles also represents Defendants named in the Original Complaint. This provides an additional basis on which a reasonable jury could find Gayles had constructive notice. *See Jones v. Salisbury City Police Dep't*, No. RDB-18-3550, 2019 WL 6253247, at *3 (D. Md. Nov. 22, 2019) (noting that naming "John Doe" Defendants in the plaintiff's initial complaint would have put counsel for the Police Department on notice that the plaintiff "intended to sue individually named officers"). Counsel for defendants had access to information that would have disclosed Defendant Gayles' name within the Rule 4(m) period. *See Waters*, 2016 WL 4373717, at *7 ("[T]he relevant inquiry for determining whether such constructive notice should be based on 'sharing of counsel' is whether counsel *knew or should have known* within the limitations period that the additional defendants would be added." (internal quotation marks omitted) (emphasis added)). And indeed, Counsel for Defendants was able to identify the names of other Defendants from a review of the allegations in the Original Complaint. *See* Plaintiff's Memorandum in Support of Motion for Leave to File a Third Amended Complaint (ECF No. 70) at 14. For these reasons, a fair-minded jury could conclude

19

from the evidence at hand that Defendant Gayles shared a sufficient identity of interest with Defendants in the Original Complaint and as a result had constructive notice of this lawsuit.

> ### D.    Defendant Gayles Has Not Been Prejudiced By His Substitution Into The TAC

*Finally*, Defendant Gayles does not claim that he has been prejudiced by his substitution into the TAC, nor would there any basis for such an argument.  Defendant Gayles was substituted into this case at the pleadings stage and has participated in the full scope of discovery.  *See Robinson v. Clipse*, 602 F.3d 605, 609 (4th Cir. 2010) (finding no prejudice where the "proceedings [had] not advanced to the point that [the newly named defendant could] show any prejudice with regard to [his] presentation or preparation of [his] defense"); *Waters*, 2016 WL 4373717, at *8; *McCrary v. Schell & Kampeter, Inc.*, No. 5:08CV150-RLV, 2009 WL 10727909, at *2 (W.D.N.C. Sept. 1, 2009).  Accordingly, Defendant Gayles cannot show that he has "suffered an unfair disadvantage or has otherwise been 'prejudiced by the passage of time between the original pleading and the amended pleading.'" *See McDaniel*, 2010 WL 3260007, at *6 (quoting *Goodman*, 494 F.3d at 468).

For all the above reasons, a reasonable jury could find that the second element of Rule 15(c) is satisfied because there is sufficient evidence that Defendant Gayles received timely notice of Mr. Garrett's lawsuit.

> ### II.    A REASONABLE JURY COULD DETERMINE THAT DEFENDANT GAYLES SHOULD HAVE KNOWN HE WOULD HAVE BEEN NAMED IN THE ORIGINAL COMPLAINT

The third and final element of Rule 15(c) requires that new defendants "knew or should have known that the action would have been brought against [them], but for a mistake concerning the proper party's identity."  Fed. R. Civ. P. 15(c)(1)(C)(ii).  Importantly, as the Supreme Court has explained, Rule 15 "asks what the prospective *defendant* knew or should

20

have known during the Rule 4(m) period, not what the *plaintiff* knew or should have known at the time" he filed his original complaint. *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 548 (2010) (emphasis in original); *see also Goodman*, 494 F.3d at 471 ("The 'mistake' language is textually limited to describing the notice that the new party had, requiring that the new party have expected or should have expected, within the limitations period, that it was meant to be named a party in the first place . . . ."). And although the textual language "also implies that the plaintiff in fact made a mistake," *Goodman*, 494 F.3d at 471, "the word 'mistake' is construed broadly," *Wyatt*, 317 F.R.D. at 540. The Fourth Circuit has expressly "rejected formalism in evaluating 'mistake' under Rule 15(c)" and has instructed courts not to "focus[] on the reason behind a plaintiff's mistake." *Robinson*, 602 F.3d at 610. Given Defendant Gayles' supervisory, disciplinary, and training responsibilities, a reasonable jury could determine that Defendant Gayles should have known that he would be named in this lawsuit on a theory of supervisory liability.

Defendant argues that his "job duties at Sussex I prior to December 25, 2018 did not include training other canine officers" and as a result he "had no reason to believe" that he would be named in this lawsuit. Mot. at 11. Defendant, however, ignores that the claims against him relate to supervisory, training, and disciplinary deficiencies, and that Gayles received or reasonably should have received notice of the incident and likelihood of a lawsuit as the direct supervisor of Franklin and Shye. Taken together, these allegations more than suffice to have alerted Defendant Gayles to his identity as Doe 2. As indicated in the VDOC Operating Procedures, "[i]n facilities with Patrol Canine Teams," Defendant Gayles, as the Canine Sergeant, was tasked with "provid[ing] support to the institutional patrol Canine Officers" and "supervis[ing] the patrol canine program." Ex. 4, Garrett 3:20cv986_0808 (VDOC Operating

21

Procedure 435.3) at 2, 9. Further, the record shows that Defendant Gayles in fact reviewed canine officers' performance plans and completed performance evaluations for canine officers—including for one of the Defendants in this case—during his time as Institutional Canine Sergeant at Sussex I State Prison. *See* Ex. 5, Garrett_3:20cv986_1229–33 (containing Defendant Franklin's work description/performance plan from November 2019, for which Defendant Gayles wrote, reviewed, and signed off on Parts I through IV); Ex. 6, Garrett_3:20cv986_1249–52 (containing Defendant Franklin's performance evaluation, which Defendant Gayles reviewed and signed in the available space next to "Supervisor's Comments"). And, as already discussed, not only was Defendant Gayles, as Canine Sergeant, required to be immediately notified about the canine attack against Mr. Garrett, but he in fact received notice of the attack, having been emailed Defendants Shy's and Franklin's reports on the attack the day after it occurred. *See* Ex. 2, JOHNSON 582_008461 (email attaching Defendant Shy's Canine Bite Log Reports, Utilization Reports, and Internal Incident Reports); Ex. 3, JOHNSON 582_007958 (email attaching Defendants Franklin's Canine Bite Log Reports, Utilization Reports, and Internal Incident Reports). Gayles also should have been aware of the attack from all of the subsequent complaints (both Plaintiffs' grievances and external inquiries) and investigations commenced by the SIU and the Commonwealth Attorney. *See* Ex. 9, Garrett 3:20cv986_0522 (Garrett's Regular Grievance and Informal Complaint); Ex. 10, Garrett 3:20cv986_0396 (SIU Investigative Report and Connors Final Report); Ex. 11, JOHNSON 582_009881 (email from Lynn Carr-Hawkes to VDOC leadership regarding Mr. Garrett's injuries and the canine attack); Ex. 12, Garrett 3:20cv986_0502 (SIU Letter to VDOC Chief of Investigations, Paul W. Haymes). Based on his supervisory, disciplinary, and training responsibilities, as well as his awareness of the

22

canine attack against Mr. Garrett, Defendant Gayles should have known that he would be named in this lawsuit, but for a mistake regarding his identity.

It should have been evident to Defendant Gayles that Mr. Garrett named a John Doe Defendant in his Original Complaint only because he was unaware of Gayles' identity, not because Mr. Garrett consciously chose not to sue Defendant Gayles. As noted above, the Original Complaint included a clear description of Defendant Gayles' title and responsibilities in connection with John Doe such that Defendant Gayles had the ability to recognize John Doe 2 was meant to identify him. *See McDaniel*, 2010 WL 3260007, at *5 (holding that a named defendant substituted for a John Doe defendant had timely notice of the lawsuit in part because the defendants "had the means and ability to identify the John Doe officer, especially since his role [was] described in the Complaint and he [was] allegedly depicted in the audiovisual recording of the events"); *Williams*, 2020 WL 748873, at *2–4 (holding that defendants "would be able to identify and inform" individuals named as Doe Defendants about the plaintiff's claims based on the complaint's description of their positions and alleged misconduct); *see also Jones*, 2019 WL 6253247, at *3 (noting that naming "John Doe" Defendants in the plaintiff's initial complaint would have put counsel for the Police Department on notice that the plaintiff "intended to sue individually named officers"). Accordingly, Gayles "should have known that the action would have been brought against [him], but for a mistake concerning [his] identity," *see* Fed. R. Civ. P. 15(c)(1)(C)(ii), and "the good fortune of [Mr. Garrett's] mistake should not save" Defendant Gayles from answering to the claims against him, *Goodman*, 494 F.3d at 472.

Contrary to Defendant Gayles' assertion that he could not have known he would be named in this lawsuit, *see* Mot. at 11, a jury could reasonably conclude from the aforementioned performance plans and evaluations as well as the relevant VDOC Operating Procedures produced

23

in discovery that Defendant Gayles should have known he would be a party to this action.

Because of these factual disputes, judgment cannot be granted as a matter of law.

### III. THE COURT SHOULD DENY, OR DEFER DECISION ON, DEFENDANT GAYLES' MOTION FOR SUMMARY JUDGMENT TO ALLOW MR. GARRETT THE OPPORTUNITY FOR ADDITIONAL DISCOVERY.

Notwithstanding that Defendant Gayles is not entitled to summary judgment on the present record, in the alternative, this Court should deny, or at minimum defer decision on, Defendant Gayles' motion for summary judgment because Mr. Garrett has not had an adequate opportunity to discover facts essential to his opposition to the motion for summary judgment. Pursuant to Federal Rule of Civil Procedure 56(d), this Court "is authorized to deny summary judgment," or postpone its decision on the motion, "where the nonmoving party has not had the opportunity to discover information that is essential to his opposition." *Rasberry v. Aecom Tech. Corp.*, No. 1:12cv1318 (JCC/TRJ), 2013 WL 12122681, at *1 (E.D. Va. Apr. 5, 2013) (quoting *Anderson*, 477 U.S. at 250 n. 5); Fed. R. Civ. P. 56(d) ("If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may . . . defer considering the motion or deny it.").

Mr. Garrett has not had an adequate opportunity to discover facts regarding whether Gayles had actual or presumed notice of the lawsuit. Specifically, Mr. Garrett has not yet had the opportunity to take Defendant Gayles' deposition. Mr. Garrett served interrogatories on Defendant Gayles on May 4, 2022, shortly after the Third Amended Complaint (ECF 90) substituting Gayles for John Doe 2 was accepted in this case. Talbot Decl.[9] ¶ 3. Defendant Gayles did not serve his responses to those interrogatories until June 30, 2022. Talbot Decl. ¶ 4.

---

[9] "Talbot Decl." refers to the Declaration of Andrew Talbot filed on July 29, 2022 as an attachment to this memorandum.

After reviewing these responses, two business days later on July 5, 2022, Mr. Garrett requested Defendant Gayles' availability for a deposition. Talbot Decl. ¶ 5. To date, Defendant Gayles has not been available for a deposition. Talbot Decl. ¶ 6.

Mr. Garrett requires the opportunity to depose Defendant Gayles to obtain additional facts regarding Defendant Gayles' knowledge of Mr. Garrett's Informal Complaint and Regular Grievance regarding the canine attack against him; the SIU and Commonwealth's Attorney's Office's investigations; and communications between the VDOC and Mr. Garrett's aunt, Lynn Carr-Hawkes. Talbot Decl. ¶ 7. As discussed above, Defendant Gayles' awareness of these grievances, investigations, and communications—which describe in detail the attack against Mr. Garrett, his constitutional injury, and his accusations of misconduct by canine patrol officers under Gayles' supervision—would indicate that Defendant Gayles had adequate notice and presumed notice of the attack against Mr. Garrett that forms the basis of this lawsuit. The aforementioned evidence that Mr. Garrett seeks in discovery would "by itself create[] a genuine issue of material fact sufficient to defeat summary judgment" on the elements of the Rule 15(c) relation back analysis. *Courtney-Pope v. Bd. of Educ. of Carroll Cnty.*, 304 F. Supp. 3d 480, 490 (D. Md. 2018) (quoting *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995)). As a result, this Court should deny, or defer a decision on, summary judgment to allow Mr. Garrett to obtain discovery on these facts that are essential to his opposition.

## CONCLUSION

For the foregoing reasons, Defendants Gayles is not entitled to summary judgment because there are genuine issues of material facts that could lead a reasonable jury to conclude the claim asserted against him in Count III relates back to the timely Original Complaint.

Dated:  July 29, 2022                    Respectfully submitted,


                                          /s/ Andrew E. Talbot
                                          Ian S. Hoffman (VA Bar # 75002)
                                          Andrew E. Talbot (VA Bar # 93801)
                                          John A. Freedman (admitted *pro hac vice*)
                                          Sophia Gonzalez (admitted *pro hac vice*)
                                          James Thompson (admitted *pro hac vice*)
                                          ARNOLD & PORTER KAYE SCHOLER LLP
                                          601 Massachusetts Ave., N.W.
                                          Washington, D.C. 20001-3743
                                          Tel: 202.942.5000
                                          Fax: 202.942.5999
                                          Email: Ian.Hoffman@arnoldporter.com
                                          Email: Andrew.Talbot@arnoldporter.com
                                          Email: John.Freedman@arnoldporter.com
                                          Email: Sophia.Gonzalez@arnoldporter.com
                                          Email: Jim.Thompson@arnoldporter.com

                                          Lauren S. Wulfe (admitted *pro hac vice*)
                                          ARNOLD & PORTER KAYE SCHOLER LLP
                                          777 S. Figueroa St., 44th Floor
                                          Los Angeles, CA 90017-5844
                                          Tel: 213.243.4000
                                          Fax: 213.243.4199
                                          E-mail: Lauren.Wulfe@arnoldporter.com

                                          Oren Nimni (admitted *pro hac vice*)
                                          Sophia Angelis (admitted *pro hac vice*)
                                          RIGHTS BEHIND BARS
                                          416 Florida Ave. NW #26152
                                          Washington, D.C. 20001
                                          Tel: 202.455.4399
                                          E-mail: oren@rightsbehindbars.org
                                          E-mail: sophie@rightsbehindbars.org

26

## CERTIFICATE OF SERVICE

I hereby certify that, on July 29, 2022, I caused the foregoing document to be electronically filed through the Court's CM/ECF system, which caused a notice of electronic filing and copy of the foregoing to be served on all counsel of record.

*/s/ Andrew E. Talbot*
Andrew E. Talbot (VA Bar # 93801)
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave., N.W.
Washington, D.C. 20001-3743
Tel: 202.942.5000
Fax: 202.942.5999
Email: Andrew.Talbot@arnoldporter.com